103    276
113     67
113    185
113    187
108    276
114    136
103    276
124    549
103    276
129    299
129    300
103    276
131    181

GEORGE H. FITCHNER & COMPANY v. THE FIDELITY MUTUAL FIRE ASSOCIATION, Appellant.

**Insurance Policy:** REFORMATION. A mutual mistake in an application for insurance on a stock of merchandise is clearly established, where both the insured and the agent soliciting the application testify that it was agreed that there should be twelve thousand dollars of concurrent insurance on the stock, and such agent erroneously fixed this amount as the limit of concurrent insurance on both the stock and the building containing it.

**PRINCIPAL AND AGENT:** *Notice.* The insurance company is charged with the knowledge of its soliciting agent that the insured desired and was placing twelve thousand dollars of concurrent insurance on the merchandise.

*Estoppel.* Insured, if without negligence, is entitled to have his policy reformed so as to increase the amount of concurrent insurance allowed, where the company's agent knew, when the application was made that the insured was actually arranging for other insurance and had definitely fixed its amount, which by the agent's mistake was understated in the application, and such right is not dependent upon the authority of the agent to contract with reference to insurance, as the company is estopped to avail itself of the agent's mistake.

NEGLIGENCE. The mere failure of the insured to read the application or the copy of it on the policy, or to read the policy, does not constitute such negligence as deprives him of the right to a reformation of the policy to correct a mistake of the agent respecting the amount of concurrent insurance to be allowed.

INCUMBRANCES. The condition of a policy of insurance against incumbrances is not broken by the execution and recording of a mortgage on the insured property to a fictitious person for the purpose of protecting the mortgagor against possible misconduct of his partner, the mortgage never having been delivered.

**Pleading:** PRAYER—INSURANCE.  A prayer in a petition in an action in equity on a policy of insurance, that the policy be so reformed as to permit concurrent insurance of a specified amount and for such other and further relief as plaintiff may be or show himself entitled to, is broad enough to include relief from a provision of the policy rendering it void if the insured "now" has or shall "hereafter" procure any other insurance, unless consent in writing is indorsed hereon.

*Appeal from Polk District Court.—*HON. C. P. HOLMES, Judge.

MONDAY, OCTOBER, 18, 1897.

ACTION in equity on a policy of insurance against loss by fire in the sum of one thousand dollars on the building, and the same amount on stock of goods contained therein.   At the time of the loss there was twelve thousand dollars insurance on the stock and eight thousand dollars on the building.   The application and also the policy contained this clause: "$12,000 total concurrent insurance allowed;" and the plaintiffs ask that this be so reformed as to be twenty thousand dollars, instead, and that the twelve thousand dollars be limited to insurance on the merchandise.   There was also an issue with reference to incumbrances.   Decree was entered for plaintiffs, and defendant appeals.   On re-hearing.—*Affirmed.*

*Dudley & Coffin* for appellant.

*McVey & McVey* and *J. P. Conner* for appellees.

LADD,   J.—I.   The three questions presented are: Was there a mistake?   If so, can it be corrected?   And

was there any incumbrance on the property? The firm of George H. Fitchner & Co., composed of Fitchner, who lived at Correctionville, and H. C. Laub, whose home is at Denison, was engaged in trade at Correction-ville, owning a building valued at from nine thousand dollars to twelve thousand dollars, and a stock of mer-chandise estimated to be worth from fourteen thousand dollars to twenty thousand dollars, at the date of the policy. P. A. Doughty, as soliciting agent of the defend-ant and other companies, procured from Laub, at Deni-son, applications for six thousand dollars insurance on the stock and five thousand dollars on the building. The applications were written by Doughty, and, being unable to complete them before leaving, were fin-ished after Laub had signed them. The latter testifies that he told Doughty that he wanted to place twelve thousand dollars insurance on the mer-chandise and eight thousand dollars on the building, and that Doughty advised him to take more, and wanted to write applications for all of it. This Laub refused, stating he had promised insurance in a company in Sioux City, and some to parties at Council Bluffs. Doughty concurs in all this, except as to the amount on the building, and says Laub requested permission for other insurance, and he told him he might exercise his discretion in that, provided he did not exceed three-fourths of the value of the stock; that in writing the application, through a clerical error, the total concurrent insurance was fixed at twelve thousand dollars on all the property, instead of being limited to the merchandise. While there was talk that the stock would be increased later in the fall, this had no reference to the arrangement concerning the amount of insurance at that time. These were the only witnesses to the transaction, and, without doubt,

both understood there was to be twelve thousand dollars insurance on the stock, and that it was not so limited through the error of Doughty in writing the application. Seldom is a mistake more conclusively established.

II.   It is said Laub ought to have discovered the mistake. The applications were very hastily prepared by Doughty, as he wished to make a train. He worked on them till near midnight. Laub testifies that he was tired out and did not read the applications. They were signed, and afterwards completed by the agent. The amount of insurance he wished to carry had been fully discussed and agreed to. Doughty was the agent of the company, and acted in that capacity in preparing the applications. The insured ordinarily rely upon the agent to properly set out the facts in the applications, and Laub did as men usually do, in assuming that the defendant's agent had done his duty. *Stone v. Insurance Co.*, 68 Iowa, 737; *McComb v. Insurance Co.*, 83 Iowa, 247. The mere failure of the assured to read his application, or the copy of it on the policy, does not establish negligence. *Bennett v. Insurance Co.*, 70 Iowa, 600; *Hagan v. Insurance Co.*, 81 Iowa, 321; *Donnelly v. Insurance Co.*, 70 Iowa, 693; *Boetcher v. Insurance Co.*, 47 Iowa, 353. Nor is the mere omission to read the policy negligence. *Barnes v. Insurance Co.*, 75 Iowa, 11; *Jamison v. Insurance Co.*, 85 Iowa, 229; *Boetcher v. Insurance Co., supra.* Laub had no reason to suppose the policy and application were drawn differently than understood. As to matters affecting the rights of the firm at the time the policy was delivered, or in the future, it must be charged with notice, but the law did not require him to search through the policy to ascertain past mistakes or misstatements of the agent or company. Under the circumstances disclosed, it cannot be said that the plain-

tiff was negligent in failing to discover the error of the defendant and its agent.

III.    Doughty had the information that the firm then desired and was placing twelve thousand dollars of concurrent insurance on the merchandise, and the company was charged with the same knowledge. This was a condition of things then existing, and incident to the very business of insurance. Applications to all of the companies could not be made at precisely the same time, nor could the policies be so issued. If the plaintiff was actually arranging for other insurance to cover the same property at that time, and had definitely fixed its amount, this was a fact, and not in the nature of an expression of a desire to procure other insurance at some future date. This rule is recognized in *Insurance Co. v. Wood* (Neb.) 69 N. W. Rep. 941, relied on by the defendant, and sustained in *Hagan v. Insurance Co., supra.*

IV.    Whether a soliciting agent may enter into a contract with reference to insurance is not involved in this case. Doughty was bound to set out the material facts as stated by Laub in the application, and, through a mistake on his part, failed to do so. Under such circumstances, the company is estopped from availing itself of the error in the application in order to defeat recovery. *Stone v. Insurance Co., supra; Eggleston v. Insurance Co.*, 65 Iowa, 308; *Reynolds v. Insurance Co.*, 80 Iowa, 563; *Key v. Insurance Co.*, 77 Iowa, 174; *McComb v. Insurance Co., supra.* Here the mistake has been carried into the policy. This the company issued on the basis of facts disclosed to the agent, and the conditions as they existed, and of which it is presumed to have knowledge. Having accepted and retained the premium and issued its policy, it is presumed to have intended to do so with reference to existing conditions known to it; and its

failure to do so, while it may have resulted from the mistake of its agent, amounted to a fraud on the plaintiff. That equity will grant relief in such cases is not an open question, see *Boetcher v. Insurance Co., supra; Esch v. Insurance Co.,* 78 Iowa, 334; *Barnes v. Insurance Co., supra; Jamison v. Insurance Co.,* 85 Iowa, 229.

V.   This clause is contained in the policy: "This contract shall be void and of no effect unless consent in writing is indorsed hereon by the secretary in each of the following instances, viz.: If the insured shall now have, or hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this contract." Applications for other insurance on the building were prepared by the same agent at the same time, and policies issued thereon. If, then, the policy is not reformed, as no estoppel is pleaded, the taking of additional insurance on the building, without permission, rendered it void from the day it was delivered. But the prayer of the petition, in asking that the policy be reformed so as to permit twenty thousand dollars concurrent insurance, "and for such other and further relief as plaintiff may be or show himself entitled to," includes this relief. It was not necessary to state the very phrase the plaintiff would have included in the policy, but making the allegations and prayer broad enough to include the relief to which the plaintiff is entitled, was quite sufficient. The evidence shows that Laub represented that the firm was then arranging for and placing eight thousand dollars insurance on this building, and that this was omitted in the application. The policy should have been so drawn as to permit this amount of concurrent insurance thereon. An amendment to the petition alleges a contract between the plaintiff and defendant's agent. No contract was made by such agent, nor did he have authority so to do. Apparently the

pleader intended to allege that Laub and the agent agreed there might be an unlimited amount of insurance on the building, and twelve thousand dollars on the stock. What contracts these parties may have made is quite immaterial. The important question is, what material facts connected with this policy of insurance did Laub make known to Doughty, which the latter failed to include in the application, and which the company omitted from the policy? And as to those, the plaintiff is entitled to relief.

VI. In 1888 the plaintiff executed a mortgage to Eliza Ann Hughes on the building and lots, and, after being recorded, it remained in the possession of Laub. The mortgagee was a fictitious person, and the mortgage was never delivered. It seems to have been prepared by Laub with the purpose of protecting himself against any possible misconduct of his partner. But as there was no debt, no mortgagee, and no delivery, there could have been no incumbrance such as is prohibited by the policy.—AFFIRMED.