WILLIAM KRELL, Appellee, v. THE CHICKASAW FARMER'S MUTUAL FIRE INSURANCE COMPANY, Appellant.

**Fire insurance:** INCREASE OF RISK: SUBMISSION OF ISSUE. In an action on a fire policy, the question of whether there has been a change in the contemplated use and occupancy of insured property rendering the risk more hazardous, and whether such change contributed to the loss, are ordinarily questions of fact for the jury. Evidence held to require a submission of the issue of increased hazard.

**Exclusion of evidence:** HARMLESS ERROR. Where the real question upon which the insurance company was entitled to offer evidence, was whether the use of a feed cooker in the insured barn occasioned a greater hazard than the use therein of a tank heater, the exclusion of evidence that the use of the feed cooker when no fire had been used, increased the hazard, was not prejudicial.

**Cause of loss:** BURDEN OF PROOF. Under Code, section 1743, a violation of the terms of a policy will not defeat recovery where it is shown " that such violation did not contribute to the loss," and the insured has the burden of proof on this question.

**Construction of doubtful terms.** Uncertain and ambiguous terms in a contract of insurance will be construed most favorably to the assured.

*Appeal from Howard District Court.*— HON. L. E. FELLOWS, Judge.

WEDNESDAY, JULY 12, 1905.

ACTION upon policy of insurance. Judgment for plaintiff, and defendant appeals. — *Reversed*.

*M. E Geiser,* for appellant.

*Springer, Clary & Condon,* for appellee.

WEAVER, J. — It is conceded that plaintiff held a policy of insurance issued by the defendant company upon his barn, and that during the term provided for in said policy the building and contents were destroyed by fire. The defendant denies any liability on account of said loss, on the ground that plaintiff, in violation of the terms and conditions of the contract, and without defendant's consent, placed in his said barn a stove or feed cooker, in which fire was used, kept, and maintained, thereby increasing the hazard of loss and rendering the policy null and void. By a second count of the answer it is alleged that, in his application for the policy sued upon, plaintiff falsely and fraudulently represented that no fire was kept or used in the barn. At the close of the testimony the defendant moved for a directed verdict in its favor, which motion was overruled, and thereafter the court directed a verdict for the plaintiff. Exception is taken to each of these rulings.

For reasons which will more fully appear in the further discussion of the case, we think there was no error in refusing the defendant's motion for a directed verdict. The

1. FIRE INSUR-
ANCE: increase
of risk; sub-
mission of
issue.

sustaining of the motion in plaintiff's favor presents a more serious question. The plaintiff's application for a policy upon his dwelling house and barn contains, among other things, the following questions and answers subscribed by him: " Is there fire now used or will it be used in buildings on the premises except

dwellings? Yes. If so, where? Tank heater. Do any of the stovepipes pass through board partitions or floor? No. Are they properly secured? Yes. Will you keep your fire apparatus, stovepipes, and chimneys in good order, and take proper care of matches and ashes? Yes." Said application, which is embodied in the body of the policy, contains also the following clause: " Any change in the use of the buildings insured which increases the risk, or any change in the occupancy thereof, the use of fire in buildings otherwise than heretofore stated . . . will render this policy void." The evidence tends to show that at the date of the application and policy there was in fact no fire used in the barn, but thereafter, in the shed or addition constituting a part of the insured building, plaintiff placed a feed cooker, with pipe passing through the outer wall. In this cooker he had from time to time for several months before the loss used fire for the purpose of cooking feed for his live stock. Whether the fire which destroyed the barn originated from the use of the feed cooker, does not clearly appear. Nothing is shown to sustain the defense based on alleged false and fraudulent representations or fraudulent warranties in the application, and this issue was properly withdrawn from the jury. The application, in the questions and answers above quoted, clearly contemplates that fire may and will be used in a tank heater placed in the barn, and, had it appeared that this was the extent of the change in use or occupancy of that building, the ruling of the trial court could be readily sustained. It is shown, however, that ".tank heater " and " feed cooker " are not synonymous terms, but indicate heating devices of somewhat different character. Under a strict application of the doctrine of warranties in contracts of insurance which formerly prevailed, this variance from the terms of the agreement would perhaps avoid the policy and prevent a recovery by the plaintiff. But under our insurance statutes (Code, section 1743), and other related provisions, this rule has been much relaxed, and a

breach of the so-called warranties or provisions constitutes, generally speaking, no defense, if it appear that such breach did not occasion or contribute to the loss. Under the proviso of the section above cited, the defense based on a change in the use or occupancy of the insured building is still good if such change makes the risk in fact more hazardous. In the very nature of things, whether the breach of the alleged warranty or promise contributed to the loss, and whether there was in fact any change in the use or occupancy contemplated by the terms of the application, and, if so, whether such change rendered the risk more hazardous, are ordinarily questions for the determination of the jury. We find nothing in the record before us which takes the case out of this general rule, and, in our judgment, the defendant was entitled to go to the jury upon the issue presented by the first count of its answer.

The defendant offered testimony by a witness who claimed to have had a large experience in such matters to the effect that the use of a feed cooker in a barn under circumstances such as were shown in this case increased the hazard of loss by fire. An objection to this class of evidence was sustained on the ground that the facts assumed did not present a case for expert evidence. Upon the general question thus raised this court seems to have ruled in favor of the position taken by the defendant. *Mitchell v. Insurance Co.*, 32 Iowa, 424; *Russell v. Insurance Co.*, 78 Iowa, 216. But the error, if any, in the ruling complained of, was without prejudice. The real question upon which the defendant was entitled to be heard and to offer evidence was whether there was any greater hazard of loss by fire on account of the use of the feed cooker in the barn than would have been occasioned by the use therein of a tank heater; but the interrogatory put to the witness, instead of asking an expert opinion upon that question, simply demanded whether the placing and using of a feed cooker in the barn, where no fire had ever been

2. EXCLUSION OF EVIDENCE: harmless error.

used before, would have the effect to increase the hazard. This inquiry, under our interpretation of the policy, was irrelevant and immaterial, and the exclusion of the answer is something of which the defendant cannot complain. Some other rulings upon the introduction of testimony are excepted to, but we find none which in our opinion involves prejudicial error.

The defendant insists that the policy, properly construed, does not permit the use of fire in the barn, either in a tank heater or a feed cooker, or in any manner whatever. On the other hand, it is the contention of the plaintiff that the affirmative answer to the question in the application whether fire will be used in the buildings other than the dwelling house gives an unrestricted right to use fire in any and all methods in which it is ordinarily employed for heating or cooking purposes, and that the answer " Tank heater," given to the next question, " Where ? " is meaningless, and does not narrow or limit the right reserved by the answer to the first question. We think neither position is sound, and that the terms employed, fairly construed, must be held to mean by the first answer that the insured reserved the right to use fire in the barn, and by the second answer he represented that such fire was to be used in a tank heater. If, as a matter of fact, a feed cooker differs materially from a tank heater, it was a technical violation of the terms of the policy; but if the facts are such that a jury could properly find that the use of a fire in the former device or apparatus did not increase the hazard over that which would have been created by the latter, and the change or substitution did not in fact cause or contribute to the loss, then the failure to observe the conditions of the policy in this respect constitutes no defense, and plaintiff is entitled to recover. If, however, these facts are not made to appear, then no recovery can be had. Counsel for appellee seem to proceed on the theory that, the change or substitution of the feed cooker for the tank heater being

*3. Cause of loss: burden of proof.*

established, the burden is upon the defendant to show that the change contributed to the loss, but such is not the statute. The provision is (Code, section 1743) that a violation of a condition of the policy shall not defeat the right of recovery thereon " if it shall be shown by the plaintiff " that such violation did not contribute to the loss. This clearly places the burden as to this fact upon the insured.

There was no error in granting a change of venue from Chickasaw county. While a denial of the application would probably not have been erroneous, the trial court is vested with a wide discretion in such matters, and we see nothing in the record to indicate that such discretion was here abused.

Other questions argued are upon matters not vital or material to the issue presented, or are such as are not likely to arise upon a retrial.

It may properly be further said that the policy in suit is somewhat unusual in respect to its form and contents. It opens with a single sentence to the effect that the company

4. CONSTRUC-
TION OF
DOUBTFUL
TERMS.

" insures the applicant in accordance with the following copy of application and Articles of Incorporation and By-Laws on the back of this certificate." Following this statement is a copy of the application in full, to which is attached the further statement that " upon approval whereof " the company " has caused these presents to be signed by its President and attested by its Secretary." This, with the date and signature of the officers, constitutes the entire contract. The articles and by-laws printed on the back contain no provision which is here in controversy, and we are obliged to look to the application alone for the terms of the agreement. That instrument is not in all respects free from ambiguity and uncertainty, and, in accordance with the well-established rule of insurance law, these terms of doubtful or equivocal meaning must be construed most strongly in favor of the insured.

For the reasons hereinbefore stated, a new trial must be ordered, and the judgment appealed from is therefore *reversed*.