C. B. CHISMORE v. ANCHOR FIRE INSURANCE COMPANY,
Appellant.

**Insurance:** VACANCY CLAUSE: WAIVER. The disclosure in an appli-
cation for insurance that the applicant holds simply a sheriff's
certificate of sale of the property will not operate as a waiver
of a provision in the policy that it shall be void in case the
premises become vacant.

*Appeal from Linn District Court.*— HON. J. H. PRESTON,
Judge.

TUESDAY, JULY 10, 1906.

ACTION on an insurance policy. Verdict was directed
for plaintiff and judgment entered thereon. The defendant
appeals.— *Reversed.*

*Edmund H. McVey* and *Cooper, Clemans & Lamb,* for
appellant.

*Jamison & Smyth,* for appellee.

LADD, J.— The policy of insurance sued on was issued
to the plaintiff upon an application in which he was asked:
" What is your title to the land on which the above-described
property to be insured is situated ? " and answered: " Sher-
iff's certificate. I will get a sheriff's deed on June 5, 1904."
Notwithstanding a condition declaring the contract void if
the assured had less than a title in fee simple, no question is
raised as to its validity on that ground. The reason for not
doing so will appear later. One Baker was owner of the
premises which had been sold on execution to plaintiff, and
a sheriff's certificate of sale issued accordingly. The house
burned down April 26, 1904, and plaintiff acquired a sher-
iff's deed June 13th following. Evidence was offered tend-

ing to show that Baker had abandoned the house about 10 days before the fire, and that it was vacant at that time; also that the hazard was increased by such vacancy. An objection to the effect that issuing a policy on an interest such as evidenced by the sheriff's certificate of sale operated as a waiver of the clause of the policy, providing that if the premises insured are or become vacant or unoccupied it shall be void, and that it shall be suspended during such vacancy, and the company not be liable for any loss or damages accruing in the meantime, was sustained. This ruling only, save that the verdict was excessive, is questioned. In the absence of any evidence tending to show that there was no increase of hazard owing to the vacancy of the property, these provisions must be given effect, unless the company is estopped from insisting upon their enforcement. *Stoltenberg v. Continental Ins. Co.,* 106 Iowa, 567; *Krell v. Chickasaw Mut. Fire Ins. Co.,* 127 Iowa, 748. And, if estopped from setting up the forfeiture or suspension of the policy, it cannot be said that independent of these provisions the hazard was necessarily increased by the vacancy of the house. *Insurance Company v. Baldwin,* 62 Ohio St. 368 (57 N. E. 57); *Luce v. Dorchester Ins. Co.,* 105 Mass. 297 (7 Am. Rep. 522); *Gilliat v. Pawtucket Mut. Fire Ins. Co.,* 8 R. I. 282 (91 Am. Dec. 229). The theory of an estoppel in such a case is that the company, after accepting the premium and issuing the policy, cannot be heard to urge its invalidity because of the existence of conditions of which it was then aware and which, by the terms of the contract, rendered the policy void from its. inception; that is, the issuance of the policy under these circumstances is regarded as an assurance to the insured by the company that the conditions are such as to meet the requirements of the contract, or, at least, will be so considered, and if the insured, in reliance thereon, receives the policy, the insurer is estopped from interposing the defense that because of the existence of such conditions the policy was void when issued. *Fitchner v. Insurance*

*Co.,* 103 Iowa, 276; *Erb v. Insurance Co.,* 99 Iowa, 728; *Ind. School Dist. v. Insurance Co.,* 113 Iowa, 65; *Welch v. Fire Ass'n of Philadelphia,* 120 Wis. 456 (98 N. W. 227); *In re Millers' & Manufacturers' Ins. Co.* (Minn.) (106 N. W. 485).

The doctrine is peculiar to the law of insurance and is founded on the laudable design of preventing the perpetration of a fraud through obtaining a premium by the insurance of a policy known to be void *ab initio.* As an original proposition it would be difficult to defend this exception to the general rule that he who becomes a party to a contract is presumed to have knowledge of its contents and is bound thereby, unless prevented from ascertaining them by some artifice or deception. But such contracts are so common and of such universal use in the business world that they are ordinarily spoken of as commodities rather than individual agreements. Insurance is bought and sold, according to the speech of the people. To omit reading the application before signing it or the policy upon its receipt is not deemed negligence as a matter of law, as would be the case with other instruments. *Fitchner v. Insurance Co., supra.* To obtain money as a premium for a policy of insurance known to be void is like procuring it for any other worthless article known to be such on the pretense that it has value. If the scheme were to prevail, it would be more reprehensible even, for thereby the assured would not only lose the money paid as a premium, but be deprived of the opportunity of insuring with others in order to guard against great loss. Notwithstanding the condemnation of· the doctrine by the majority of the court in *Northern Assurance Co. v. Grand View B. Ass'n,* 183 U. S. 308 (22 Sup. Ct. 133, 46 L. Ed. 213), it has the approval of the overwhelming weight of authority.

But the facts of this case do not permit of its application, At the time the policy was issued to plaintiff the premises were occupied by the owner. The house was not

vacant, and there was no inconsistency involved in issuing the policy on plaintiff's interest therein with the conditions concerning vacancy. This being true, the contract was valid at its inception, and the insured acquired what he applied for. Possession by the owner continued for nearly a year before moving out. It then became vacant, and there is no more reason for saying that, because plaintiff could neither move in nor procure some one else to do so as his tenant, owing to his want of title, the company cannot avail itself of these conditions, than had he been owner and ignorant of the fact of such vacancy or unable to find a tenant. That the latter circumstances furnish no excuse appears from *Ohio Farmers' Ins. Co. v. Vogel* (Ind. App.) (73 N. E. 612); *McClure v. Watertown Fire Ins. Co.,* 90 Pa. 277 (35 Am. Rep. 656); *Schuermann v. Ins. Ass'n,* 161 Ill. 437 (43 N. E. 1093, 52 Am. Rep. 377); *Moore v. Phœnix Assurance Co.,* 64 N. H. 140 (6 Atl. 27, 10 Am. St. Rep. 384). See *Dennison v. Phœnix Ins. Co.,* 52 Iowa, 457, where the rule that courts may not add to or detract from the contracts made by the parties is tersely and emphatically expressed.

That the insured's interest conferred on him neither the right of possession nor control can make no difference. He could contract for the insurance of the house while occupied by another and stipulate that upon its becoming vacant the policy should stand suspended until occupied again, precisely as though he had been owner, and this even though without authority to place any one in possession. The parties to the contract might well have proceeded on the theory that the possessory use of the property was of such value that it would be likely to continue, as it then was in the occupancy of either the owner of the fee or some one under him. The term of the policy extended nearly two years from the date the assured might obtain a sheriff's deed.

The agreement that the house should be insured when occupied and the policy suspended when vacant was not limited to property of which the assured might be in possession

or control, and, in the absence of any such restriction, there is no tenable ground upon which to decline to give effect to such agreement. The policy as written was not inconsistent with the interest insured, and the mere fact that it was suspended without fault of plaintiff, but according to its terms, would furnish no reason for repudiating its conditions. If the house was vacant when destroyed, the company was not liable. The evidence should have been received.— *Reversed.*