ADAM ECKERT and ELLIS VAUGHN v. CENTURY FIRE INSURANCE COMPANY, Appellant.

**Evidence:** WHEN NOT SUFFICIENT TO CREATE A CONFLICT. Where an insured, as in this action, testified that he informed defendant's agent at the time he drew up the application for insurance that there was a mortgage on the property, the agent's testimony that he had no recollection that insured so informed him, and that his first knowledge of the mortgage so far as he could recollect was after the loss occurred, was not sufficient to create a conflict in the evidence and a directed verdict on that issue was proper.

**Insurance:** APPLICATION : NEGLIGENCE: FRAUD : ESTOPPEL. Where the agent of an insurance company fills out an application for insurance from information furnished by the insured, negligence can

not be predicated on the fact that the insured signed the same without reading it. And knowledge concerning the condition of the property insured thus imparted to the agent will be imputed to the company, and will estop it from insisting on the invalidity of the policy because of a false statement in the application not attributable to the insured.

**Same:** BREACH OF CONDITION: FORFEITURE: ESTOPPEL. Failure of an insured to examine a policy issued to him and to return the same if the application attached is not in accordance with his statements, will not render the policy void or forfeit his rights thereunder; although failure so to do might estop him from claiming that his statements were incorrectly recorded by the agent who made out the application, if estoppel were pleaded.

*Appeal from Pottawattamie District Court.*—HON. W. R. GREEN, Judge.

THURSDAY, JANUARY 13, 1910.

REHEARING DENIED MONDAY, MAY 16, 1910.

SUIT on a policy of fire insurance. There was a directed verdict and a judgment thereon for the plaintiffs. The defendant appeals.—*Affirmed.*

*Read & Read,* for appellant.

*Saunders & Stuart,* for appellees.

SHERWIN, J.—On the 15th day of February, 1904, the plaintiffs as copartners bought and took possession of a livery stock in the town of Walnut, Iowa. On the same day they executed a chattel mortgage on the same stock for the sum of $1,600, and said mortgage was duly recorded on the 16th of February, 1904. On March 3, 1904, the firm made written application to the defendant for insurance on said stock, and on the 7th of March, 1904, the defendant issued a policy insuring the same. On

the 11th day of August, 1906, the plaintiffs suffered the loss for which they seek recovery in this action. The written application was signed by one of the plaintiffs for the firm, and it was provided therein, among other things, that it contained a full and "complete statement and exposition of all facts in regard to the conditions, . . . and risk of the property to be insured, and warrants the same to be correct and true, whether written by said applicant in ink or not. No liability of the company shall attach until approved by the home office. And the undersigned applicant to the proposed insurance hereby agrees to accept the policy issued upon this application, or to return the same at once to said company if not in accordance with his statements; and if any untrue statement has been made herein, or untrue answer given to any of the foregoing questions, then this instruction to be void and the policy of no effect." The application contained the inquiry: "Is any of the property to be insured incumbered?" and the question was answered, 'No.' in writing. The application was made a part of the policy, and the policy itself provided that, 'if the subject of insurance, or any part thereof, be or become incumbered by mortgage, . . . it should be void.'"

The facts necessary to an understanding of the case were as follows: The plaintiffs had given a chattel mortgage on the stock to secure a part of the money used in the purchase thereof. They wanted to insure, and talked with M. L. Spangler, the defendant's local agent, about insuring in said company. One J. E. Flynn was a special agent of the defendant, and Spangler took him to the plaintiffs for the purpose of securing the risk. Flynn took the application, filling the blanks therein himself, and it was signed by Eckert for the firm without reading it. Spangler knew of the mortgage on the stock, and he testified that he told Flynn before the application was

<div style="margin-left:2em">1. EVIDENCE: when not sufficient to create a conflict.</div>

taken that the stock was mortgaged. Eckert testified that, when Flynn was filling out the application, he asked the question whether the property was incumbered; that he answered that it was; that he did not see the answer that Flynn wrote to the question, or knew that he had written a negative answer thereto, until after the fire. Flynn testified but did not deny that Spangler and Eckert had informed him of the mortgage. He did testify, however, that he had no recollection of their so informing him, and that, as far as he could remember, his first knowledge of the mortgage was received through a letter from the president of the company after the loss. We think the testimony of Flynn did not raise a conflict in the evidence on that point. The fact that he did not remember the conversations with Spangler and Eckert would not necessarily tend to create such conflict. Nor would his further statement that, as far as he could remember, he did not know of the mortgage until after the fire. The latter statement was but a reiteration that he had no recollection of the conversations testified to by Spangler and Eckert, for there was no claim that he had received information as to the mortgage from any other source. So far then as the fact of the notice is concerned, the trial court properly directed a verdict.

We have held that the insured is not negligent because he does not read the application for insurance which he signs. *Chismore v. Anchor Ins. Co.,* 131 Iowa, 180; *Fitchner v. Fidelity Mut. Ass'n,* 103 Iowa, 276. And the knowledge of Flynn and Spangler, who were both engaged in securing the plaintiffs' application, was the knowledge of the defendant company, and would estop it from insisting upon the invalidity of the policy when issued because of the statement in the application that the property was not incumbered. *Padrnos v. Century Fire Ins.*

2. INSURANCE:
application:
negligence:
fraud:
estoppel.

*Co.,* 142 Iowa, 199; *Chismore v. Insurance Co., supra;*
*Wensel v. Insurance Co.,* 129 Iowa, 295.

This rule is conceded by the appellant, but it is in-
sisted that the clause in the application and in the policy
whereby the applicant for insurance agreed to accept the

3. SAME:
breach of
condition:
forfeiture:
estoppel.

policy issued upon the application, or return
the same at once to said company if not in
accordance with his statements, takes the
case out of the above class, and that the rule
governing therein is not applicable here. It is said that
the agreement to accept the policy or return it at once if
not in accordance with the applicant's statements consti-
tuted a preliminary contract between the plaintiffs and
the defendant which was carried into and became a part
of the policy; that it was a distinct and independent un-
dertaking on the part of the assured in no way relating
to the subject of insurance; that the assured is bound
to know his express independent agreements; that he neg-
lects to do so at his peril; that whether he has or has
not made true statements, and whether the soliciting agent
has or has not correctly written his answers and state-
ments, have nothing whatever to do with the independent
contract to read his policy and return it if not correct.
The substance of the appellant's contention is that the
assured agreed to read the policy and the application at-
tached thereto, and that the policy should be returned if
it was found that untrue answers appeared in the appli-
cation. In other words, it is claimed that the assured
undertook to protect the defendant against any waiver or
estoppel which he might himself otherwise urge on account
of the knowledge of the defendant's agents. Or, to put
it in a still different form, the plaintiff agreed to protect
the insurer against the mistakes or rascality of its own
agents. Corporations can do business only through officers
or agents, and any notice or knowledge imparted to an
officer or agent authorized to receive the same is actually

imparted to the corporation. The contract relied upon makes no distinction between the "actual" and what the appellant terms the "constructive" knowledge of the defendant, and, if held enforceable, it would require the assured to examine his policy to protect the corporation against the errors of its own officers and agents, no matter what the position held by them. It would also require the assured to protect himself against such fraud and error without the right to waive the reading for his own protection. It is undoubtedly true that parties should ordinarily be permitted to make their own contracts, and we are not disposed at this time to pass on the validity of the one in question, for reasons which we shall state in this connection. If it be conceded to be valid, a failure to comply therewith does not render the contract of insurance void. The untrue statements or answers which would make the policy void are evidently the untrue statements and answers of the applicant, and not of the defendant or its agent. It is possible that the assured might be estopped from claiming that the answers were not correctly recorded by the agent; but an estoppel must be pleaded to be relied upon, and there is nothing of the kind here.

We need not now determine what the defendant's rights may be in the case of failure to comply with the agreement under consideration. What we now decide is that a failure to comply therewith does not render the contract of insurance void or forfeit the plaintiffs' rights thereunder.

We find no reversible error in the ruling on the introduction of testimony.

The judgment is right, and it is *affirmed*.