Smith & Rumery, Plaintiff in Error, v. H. A. Otis Company, Defendant in Error.

### Gen. No. 15,238.

MEASURE OF DAMAGES—*in action for breach of contract for sale of chattels*. The true measure of damages for a breach of a contract for sale of chattels by the seller, is the difference between the contract price and the market value of the articles at the time when and the place where they should have been delivered.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed July 14, 1910.

Statement by the Court.   Plaintiff, a corporation doing business at Portland, Me., made by correspondence a contract with defendant, a corporation doing business at Chicago, whereby the defendant agreed to sell to plaintiff thirty circular church pews of a specified pattern.   The order for the pews was given by plaintiff in its letter of August 20, 1906, in which is the following: "Price of the above to be $427.35 F. O. B. Chicago, plus $56.70 for circular pews, plus 14 cents each for the book racks."   In the letter was an inquiry as to the additional price if ends No. 49 were used in place of No. 5.   Defendant wrote plaintiff August 22, accepting the order and quoting $45 as the increased cost of the No. 49 ends over the No. 5.   August 24 plaintiff wrote defendant accepting the proposition of $45 additional for the No. 49 ends.   By this letter the contract was completed.   The pews were to be shipped within four months after the receipt of the order.   The defendant refused to perform the contract and plaintiff brought this action to recover damages for its breach.   The cause was submitted to the court and the issues found for the plaintiff, but the court awarded plaintiff only one cent damages, gave judgment for that sum and costs, and the plaintiff prosecutes this writ of error.

The breach of the contract occurred in December.   Smith, the president and general manager of the plaintiff, testified that plaintiff then went to work and made the pews.   Asked, "if he made any effort to have any regular manufacturer of pews supply them" he answered, "We did not; we had waited so long that we dared not trust to any one else making them, as it would take, we knew, from three to four months."   He further testified that it cost plaintiff $1,195.73 to make the pews.   Asked if he knew any reason why it should cost plaintiff $1,195.73 to make the pews which defendant had agreed to furnish for so much less, he answered, "We were not specially fitted to do such work. Our machines are not specially fitted up for that kind of work.   It naturally made expense to get them ready."   Asked, "Could you have obtained within a reasonable time

the furniture from any concern having the special machinery adapted to making pews?" he answered, "We did not dare to risk it from the experience we had had."

The testimony for the plaintiff tended to show that the pews were to go into a church at Cumberland Center, Me.; that Orren S. Thomes, with whom plaintiff had, "an arrangement to supply the pews", claimed $200 damages of plaintiff for delay in furnishing the pews, and that plaintiff did not dispute the claim. Thomes was asked what connection he had with the building of the church, and answered, "I had full control of the carpenter work and all the business of the finishing. I was a mechanic put in charge of the finishing and rebuilding of the church; in fact of all the work I had general oversight and control, and the contracting for the pews and windows and all that work." He further testified that the pews were not delivered until April, 1907. Asked if he had made any claim for damages against plaintiff for delay in furnishing the pews, he answered that after waiting a long time and communicating with plaintiff in respect to the delay, "in my contract, or my charge over the work," he wrote asking for $200 from plaintiff for the delay, and that plaintiff had never disputed his claim for damages.

Sheriff, Dent, Dobyns & Freeman, for plaintiff in error.

No appearance by defendant in error.

Mr. Justice Baker delivered the opinion of the court.

Plaintiff in error contends that there is evidence in the record sufficient to entitle the plaintiff to substantial damages for the breach of the contract by defendant, *first,* for the difference between the contract price and the sum it cost plaintiff to make the pews, and, *second,* for special damages "arising from the delay on the building contract which Smith and Rumery were acting under." The usual measure of damages for the breach of a contract for the sale of chattels

by the seller is the difference between the contract price and the market value of the article at the time when and the place where it should have been delivered. The place of delivery under the terms of the contract was Chicago. Plaintiff offered no evidence as to the market value of the pews in Chicago at or about the time of the breach of the contract, nor any evidence that the pews could not then have been purchased in Chicago, or that the pews then had no market value in Chicago. We think that the refusal of the trial court to award plaintiff more than a nominal sum for direct damages by reason of the breach of the contract may be sustained on the ground that plaintiff failed to prove either the market value of the pews in Chicago at the time of the breach of contract, or that the pews then had no market value in Chicago.

Defendant was informed before the contract was made that the pews were purchased for resale at Portland. In Louis Cook Mfg. Co. v. Randall, 62 Iowa, 244, it was held that in such a case the market price at the place of resale controlled in fixing the measure of damages. If the doctrine of that case be followed in this case, the result will be the same. Plaintiff offered no evidence tending to show that the pews could not be purchased in Portland or that they had there no market value. It is only when the article sold cannot be purchased in any market at any price that the buyer may prove his actual loss in some other way. Even in cases where the article could not be purchased in any market at any price, it has never, to our knowledge, been held that on a breach of contract by the seller, the buyer could manufacture the article and recover of the seller the difference between the contract price and the cost of manufacture.

We find no evidence in the record to warrant or support an award of damages to plaintiff on account of the claim made against it by Thomes. His testimony was in substance as follows: "I had full control of the carpenter work and the finishing. * * * I had general oversight and control and the contracting for pews, windows, and all that

work." His testimony tends to show that whatever contract he made with plaintiff was made for the church, or the society which was building the church; that he was but an employe of the church or society, and therefore that he could have no valid claim to recover damages for any delay on the part of plaintiff in the performance of its contract with the church or society.

We think the trial court properly refused, on the evidence, to give to plaintiff more than nominal damages, and the judgment is therefore affirmed.

*Affirmed.*