---

(No. 11489.—Appellate Court reversed; municipal court affirmed.)
G. S. COPPOLA, Plaintiff in Error, *vs.* THE MARDEN, ORTH & HASTINGS COMPANY, Defendant in Error.

*Opinion filed December 19, 1917—Rehearing denied Feb. 6, 1918.*

1. APPEALS AND ERRORS—*when the Supreme Court has power to issue writ of certiorari.* If the amount of the judgment of the trial court in an action on a contract exceeds $1000 the fact that the judgment is reversed by the Appellate Court, which enters a judgment for a sum less than $1000, does not deprive the Supreme Court of jurisdiction to issue a writ of *certiorari* under the Practice act.

2. CONTRACTS—*purchaser is not required to pay cash contrary to terms of contract in order to reduce damages for breach.* Where a contract for the sale of a specified number of barrels of olive oil during a year provides for sixty days' credit on each shipment the seller has no right to demand cash, and the measure of damages for the seller's refusal to carry out the contract is the difference between the contract price and market price of the oil bought by the purchaser, and not merely interest for sixty days on each purchase.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. HARRY C. MORAN, Judge, presiding.

DONALD L. MORRILL, and WORTH ALLEN, for plaintiff in error.

CULVER, ANDREWS, KING & STITT, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

G. S. Coppola, plaintiff in error, gave his written order to a solicitor of the Marden, Orth & Hastings Company, defendant in error, on July 9, 1914, for forty barrels of a certain brand of olive oil at $1.30 per gallon, said oil to be delivered within one year, terms sixty-day draft with shipment. On August 10, following, the plaintiff in error (hereafter called plaintiff) called upon defendant in error (hereafter called defendant) for five barrels of olive oil. Defendant on August 13 by letter acknowledged receipt of the said order for five barrels of the forty barrels ordered July 9, stating the European situation had affected the market in olive oil, and that the oil quoted plaintiff at $1.30 was then worth $2.50 per gallon. The letter stated: "However, your order was taken for forty barrels, and, subject to immediate acceptance, we shall deliver this quantity net spot cash. It is the request of our credit department that we allow no credit on oil sold at this low price, and we shall therefore be obliged to give you this oil on these terms." Plaintiff called upon defendant to deliver him, as per the terms of his contract, ten barrels of oil on October 12, 1914, ten on May 14, 1915, and fifteen on July 2, 1915. Defendant refused in each instance to sell him the oil on credit but offered him the same for cash at the contract price of $1.30 per gallon. Plaintiff refused to pay defendant cash for the oil and purchased it of other

firms, the ten barrels purchased May 14, 1915, costing $1.85 per gallon and the other thirty barrels costing $2.20 per gallon, this being the market price at that time.    Plaintiff brought suit in the municipal court of Chicago against defendant for the difference between the contract and market price at the place and on the different times purchased and recovered a judgment for $1537.50.    On appeal to the Appellate Court the judgment was reversed and a judgment entered against defendant for $21.67, this being interest at the legal rate upon the price of the oil for a period of sixty days,—the length of credit extended by the contract. Plaintiff has brought the record to this court for review by writ of *certiorari.*

Defendant insists the Appellate Court not having granted a certificate of importance, and the judgment of that court being for less than $1000, such judgment is final.    It is the judgment of the trial court in this case, and not the judgment of the Appellate Court, which determines this court's jurisdiction to issue writs of *certiorari.*

Defendant insisted in the trial and Appellate Courts, and insists here, that its solicitor had no authority to bind it by contract to sell plaintiff oil on credit, and that plaintiff failed to prove a contract allowing him sixty days' credit. Both the trial and Appellate Courts held against defendant on that question, and, we think, correctly.

The other question involved relates to the measure of damages for the breach of the contract.    The plaintiff contends, and the trial court held, he was entitled to the difference between the contract price and the market price of the oil at the place and within the time mentioned in the contract, which was found to be $1537.50.    Defendant contends, and the Appellate Court held, plaintiff was only entitled to interest on the amount of the contract price for sixty days, amounting to $21.67.    While it is true that upon a breach of a contract of sale by the seller the buyer is required to do what is reasonable to minimize or reduce his

loss, he is not required to do all that is possible. (Sutherland on Damages,—3d ed.—sec. 90; 24 Am. & Eng. Ency. of Law, 1156.) The proof showed the securing of sixty days' credit to pay for the oil was one of the considerations moving plaintiff to enter into the contract for the purchase of the oil from defendant. Plaintiff testified he would not give defendant's agent an order for the oil when first offered thirty days' credit but insisted upon and was given sixty days' time in which to pay for the oil. Time in which to pay, or credit, was clearly a material element of the contract. Defendant refused to perform its contract to deliver the oil on sixty days' credit. It is apparent from the evidence that the advance in price was the reason for its refusal, but the reason assigned was that the contract was not for a sale on credit but was for cash. Plaintiff contended the contract gave him sixty days' time and insisted upon its performance according to its terms. Whatever may have been plaintiff's reason for wanting sixty days in which to make payment, the contract gave him that privilege and he was entitled to it. Although there are some authorities to the contrary, we do not think he was required to pay defendant or anyone else cash for oil to take the place of oil he had contracted to pay for in sixty days. To have done so with defendant would have been, in effect, acquiescence in defendant's contention of what the contract was. We do not consider it important whether plaintiff could have borrowed the money to pay cash for the oil. He contracted for it on credit for reasons sufficiently important to him, and if he had not been given the credit he would not have contracted to purchase the oil of defendant, and he was under no obligation to pay cash for the oil in order to lessen the damages resulting from defendant's failure to keep its promise and perform its contract. Pertinent and applicable to this discussion is language of the Supreme Court of Iowa in *Cook Manf. Co.* v. *Randall,* 62 Iowa, 244. The court there said: "It is true, as said

by counsel for plaintiff, that defendants were required to do all they reasonably could to prevent damages, but to require them to pay cash when they had contracted for credit is not within the bounds of reason. The condition as to credit was an important and essential provision of the contract."

It cannot be denied that there are authorities of high respectability sustaining, directly or indirectly, the measure of damages contended for by defendant, but the contrary authorities seem to us to be supported by sounder policy and reason. It is a sound and wholesome rule which makes it the duty of one damaged by the unlawful act of another to use reasonable diligence to prevent or lessen the damage, but to construe that rule to apply to a case of this character would be to impose a burden on the vendee of doing what the contract relieved him from, in order that the guilty party might be saved from the full consequences of his willful wrongdoing. We believe it to be sound both in law and morals that commercial contracts of a lawful character, knowingly and understandingly entered into, are binding obligations on both parties to them, and, as said in substance in *Illinois Central Railroad Co.* v. *Cobb, Christy & Co.* 64 Ill. 128, it comes with an ill-grace from a party who has refused to perform the agreement to demand that the other party, who has not been at fault, should do something contrary to the terms of the contract to mitigate or lessen the damages resulting from the refusal to perform the contract. The following cases support, either directly or in principle, this view: *Frohlich* v. *Independent Glass Co.* 144 Mich. 278; *Campfield* v. *Sauer,* 111 C. C. A. 14; 38 L. R. A. (N. S.) 837; *Cook Manf. Co.* v. *Randall, supra.*

The judgment of the Appellate Court is reversed and the judgment of the municipal court affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of municipal court affirmed.*