(No. 31184.

SARAH E. CARRELL *et al.,* Appellants, *vs.* HOWARD H. HIBNER, *et al.,* Appellees.

*Opinion filed March 22, 1950—Rehearing denied May 15, 1950.*

546

Irving Shutts, and Oscar R. Laraway, both of Joliet, for appellants.

Zeamore A. Ader, and Raymond M. Grossman, both of Chicago, and Francis J. Loughran, of Joliet, for appellees.

Mr. Justice Crampton delivered the opinion of the court:

Certain children of Francis A. Hibner, deceased, filed suit in the circuit court of Will County against the remaining children of the decedent praying that farm land devised by him to the children be partitioned, and, in the event of a sale, that the proceeds be divided among the owners according to their several rights and interests therein. The court ordered partition to be made, reserved determination of the issues raised by the pleadings as to deductions from the shares of certain owners on account of alleged debts owed to the father's estate, and referred such issues to a master in chancery. After hearings, the master made his

report finding, in accordance with plaintiffs' contentions, that deductions should be made from the respective shares of certain of the parties on account of debts incurred to the decedent, and that costs of the reference should be charged to defendants. The court overruled objections to the report, and entered a decree in accordance with the findings of the master, except as modified to divide the costs between the parties. On appeal by defendants to the Appellate Court, wherein plaintiffs made a cross appeal as to the ruling on costs, the decree was reversed, the court holding that the deductions should not have been made and that the circuit court erred in that respect. Plaintiffs have appealed to this court, pursuant to leave heretofore granted.

On November 28, 1929, Francis A. Hibner died leaving a will by which he devised the real estate in question to his widow for life with remainder to his nine children, one of whom thereafter died leaving a husband and five children. The widow subsequently died, on January 5, 1945. On the date of testator's death each of the defendant children was indebted to him in various amounts, represented by promissory notes. One of the plaintiff children and the deceased child, the husband and children of whom are among the plaintiffs herein, were also indebted to the testator, and an additional loan from the estate was made to one of the defendants. None of the notes were collected, but instead the executors entered into an arrangement whereby they were cancelled and new notes in the same amounts were substituted, made payable to the surviving widow. The new notes were delivered to the family attorney and remained in his possession until the hearing herein.

In 1931 it became necessary to raise money to pay delinquent taxes on the real estate and to satisfy debts and unpaid costs of administration. After numerous meetings in the office of the family attorney it was decided that the land should be conveyed to Emma A. Hibner, a daughter of the testator; that she should then mortgage it as security

for a loan in sufficient amount to pay these expenses and also to loan two of the plaintiffs $450 each. It was further decided that, to protect the interests of all the parties, she should execute a declaration of trust specifying the purpose for which she held title. On October 5, 1931, a deed was accordingly executed by the widow and children, conveying title to Emma A. Hibner, and thereafter, on or about January 25, 1932, she executed a declaration of trust stating that she held title for the benefit of the widow for life and for the children subject to this life estate. The instrument also provided that the interests of the named children who were indebted to the estate of their father are burdened with the amounts of their respective debts, and specified the amount in each case. It further provided for a sale of the real estate after the death of the widow, for division of the net proceeds into nine equal parts; for deducting from the share of each indebted child the amount of his or her indebtedness with interest; and for division of the total of such deducted amounts into nine equal parts, the husband and children of the deceased daughter to take the one-ninth share to which she would have been entitled. It is the portion of the trust providing for burdening their interests with their respective debts, and for deductions from their respective shares of the proceeds, which defendants now dispute and which they contend was never authorized by them. Although each of the beneficiaries was furnished with a signed copy of the declaration, no objection was made by any of them until after this suit was begun on November 26, 1945.

In 1941, for the purpose of refinancing the mortgage loan, an authorization for the trustee to make the new loan was signed by all the beneficiaries except two children of the deceased daughter, who were minors at the time and who are now among the plaintiffs herein. This authorization contains a recital as follows: "The rights and interests of the undersigned in said premises as set forth in the Declara-

tion of Trust heretofore executed thereto by said Emma A. Hibner are hereby only effected to the extent of making the trust deed to be executed on said premises by said Emma A. Hibner in accordance herewith a prior and paramount lien on said premises." The principal issue is whether, as a matter of law, the circuit court erred in decreeing that the amounts of defendants' debts should be deducted from their respective shares and divided equally among the beneficiaries, and whether the Appellate Court was therefore correct in reversing the decree.

We are met at the outset with defendants' contention, made for the first time in their brief, that this court lacks jurisdiction to consider the appeal. This contention is based upon the argument that the amount involved in the claim of each plaintiff is less than $1500 and that under section 75 of the Civil Practice Act (Ill. Rev. Stat. 1947, chap. 110, par. 199,) the claims of the several plaintiffs cannot be consolidated for the purpose of satisfying the jurisdictional requirement. The proceeds of sale, which the decree ordered distributed in accordance with the complaint, amount to $43,700. The amounts ordered to be deducted total $15,450.74. Of that sum the debts of defendant children total $12,962.01 and those of the indebted plaintiffs $2488.73. To support their position defendants take the figure $12,962.01 which, when divided by nine, is less than $1500 for each plaintiff. Plaintiffs, on the other hand, divide the total debts, or $15,450.74, by nine to reach a quotient greater than $1500 per plaintiff. We think, however, that the jurisdictional requirement is satisfied by virtue of the fact that the decree disposed of the entire fund representing the assets of the trust. It ordered distributed not only the amounts deducted but also the balance of the proceeds of sale. Section 75, in so far as is relevant, requires that the petition be denied "unless the judgment, exclusive of costs, shall be for fifteen hundred dollars ($1500.00) or more, or in cases in which the judgment is

against the plaintiff and there is issued by the Appellate Court, or by one of the judges thereof in vacation, a certificate to the effect that there is fairly involved in the claim of the plaintiff fifteen hundred dollars ($1500.00) or more." The applicable portion of such provisions is the first, namely that the judgment, exclusive of costs, shall be for $1500 or more. The law is clear that it is the judgment of the trial court, and not the judgment of the Appellate Court, which determines the jurisdiction of this court. (*Coppola* v. *Marden, Orth & Hastings Co.* 282 Ill. 281.) Where the decree of the trial court disposes of a fund in the hands of a trustee the jurisdiction of this court is determined with reference to the amount in the trustee's hands subject to disposition under the decree, regardless of the fact that the application of only a part of that fund is questioned. (*Longwith* v. *Riggs,* 123 Ill. 258.) It is clear that this court has jurisdiction of the appeal.

The Appellate Court reversed the decree on the ground that defendants did not sign the declaration of trust or any other writing authorizing Emma Hibner to charge their interests in the real estate with their debts, and that such provisions "effected" an interest in land and are therefore unenforceable under section 2 of the Statute of Frauds. (Ill. Rev. Stat. 1947, chap. 59, par. 2.) As a further ground for the judgment of reversal, the Appellate Court, without explaining that the notes were payable on demand, observed: "Since these debts were merely evidenced by unsecured notes, bearing the dates of 1929 and 1931, on which no interest was paid after 1931, they are barred by the 10-year statute of limitations."

We think the Appellate Court was in error. If any part of the Statute of Frauds had application here it would be section 9 thereof, and not section 2, which would govern the present trust. Section 9 ordains that "All declarations or creations of trusts or confidences of any lands, tenements or hereditaments, shall be manifested and proved by

some writing signed by the party who is by law enabled to to declare such trust, or by his last will in writing; or else they shall be utterly void and of no effect: Provided, that resulting trust or trusts created by construction, implication or operation of law, need not be in writing, and the same may be proved by parol." (Ill. Rev. Stat. 1947, chap. 59, par. 9.) It is clear that no part of the present trust is within the statute. The provisions concerning deductions of the debts were adequately embodied in writing signed by the party enabled to declare the trust, namely: Emma Hibner, the grantee under the deed. If those provisions were included as a result of fraud or mistake, matters clearly not established by this record, the remedy would be by suit to reform or rescind the trust, not by asserting the Statute of Frauds to avoid one portion of the instrument while relying on the other part to sustain claims of ownership. In so far as the requirements of the Statute of Frauds are concerned, defendants signed the only writing required from them: the deed purporting to convey unqualified title to Emma Hibner. They thereby conferred upon her the sole power to declare the terms of the trust, and were bound by the instrument she executed, for without it she would have had the entire estate and there would be no express trust capable of proof.

In *Myers* v. *Myers,* 167 Ill. 52, one Adam Myers conveyed certain real estate to an attorney named Wike, on a verbal trust. No trust was expressed in the deed and none was declared at that time by the grantee, but it was undisputed that the verbal agreement included a provision for life estates in the grantor and his wife. The conveyance was made during pendency of a separate maintenance suit between the grantor and his wife, and was the outcome of an oral settlement agreement therein. Pursuant to consent of the parties, a draft of a decree was prepared by one of the counsel in that suit providing for such life estates with remainder to the children of the grantor and his wife after

their deaths. This draft was entered as the decree, except that, because the children were not parties to the suit, the court struck out the provisions for remainder to them and inserted instead a provision that Mr. and Mrs. Myers should hold the respective properties set apart to them until further order of the court. No further action was ever taken in the case. After his wife's death Myers executed deeds of the property to some of his children and thereafter died. The other children, not provided for in the subsequent deeds, brought a bill for partition against the grantees in such deeds and against Wike, the original grantee, alleging that Wike took title upon an express trust to hold it for the benefit of Myers and his wife during the life of the survivor, with remainder to the children equally. Wike filed an answer in which he admitted taking title in trust but alleged uncertainty as to its exact terms, implying that they were not expressed in writing. The other defendants alleged the trust had been created only for a temporary purpose, in connection with the separate maintenance suit. In support of this position they argued that the trust was manifested and proved by the answer filed by Wike in the partition suit and by the record in the separate maintenance suit, without resort to parol evidence, and that the Statute of Frauds barred the express trust set up in the bill. We rejected this contention and held instead that Wike had the sole power to declare the express trust, and did so by his answer filed in the partition suit; that his answer showed the terms of the trust rested in parol, waived the Statute of Frauds, and therefore allowed such terms to be proved by parol evidence. In concluding that defendants' arguments would be inconsistent with the trustee's answer, and therefore could not be considered, we observed: "The answer, which declares that the conveyance was in trust, must be taken as a whole, (Perry on Trusts, sec. 65,) and when so considered it shows, we think, that the precise terms and conditions of the trust, and the agreement to

carry out which the conveyance was made, were not contained in any writing, so that to deduce the temporary trust insisted upon, whereby, upon its accomplishment, it would appear that the title reverted to Adam Myers in his lifetime, would be inconsistent with a part of the writings themselves." As to defendants' reliance upon the Statute of Frauds in that case, we said: "Neither they nor their grantor could have pleaded the Statute of Frauds as against Wike nor as against any claiming under him, and we think it follows they could not plead it as against beneficiaries claiming under the trust which, by virtue of the absolute conveyance to Wike, he had full authority to declare."

The declaration in the case at bar, which corresponds to Wike's answer in the *Myers case,* constitutes the writing required by the Statute of Frauds. Defendants, who are themselves the grantors in this case, manifestly cannot plead the statute as against the trustee and the other beneficiaries under the trust which, by virtue of the absolute conveyance to Emma Hibner, she had full authority to declare. The Statute of Frauds is not only unavailable to defendants as a means of nullifying a part of the written declaration but would, in the absence of that declaration, be a complete defense to attempts by defendants to show any kind of an express trust as against Emma Hibner.

The findings of the master, that the provisions of the trust were in accordance with the understanding of the parties and that there was no fraud or misrepresentation in connection therewith, and the decree approving such findings and ordering the deductions to be made, are amply warranted by the evidence. It is not disputed that defendants were furnished with copies of the declaration and made no objection to its terms until after this suit was brought by the other children some 13 years later. Moreover, in 1941, nine years after the trust was declared, each defendant signed the authorization for the new mortgage, expressly referring to their rights and interests as set forth in the

declaration and providing that they are modified only to the extent of encumbering the premises with the new mortgage. The only evidence offered by defendants was their own testimony to the effect that they were farmers and had little formal education; that they did not consent to have the debts deducted; and that they did not read the papers they signed and had no knowledge of their contents. Testimony of plaintiffs, on the other hand, showed that all the parties were present during discussions concerning the transaction, and that the family attorney read the declaration to all the children and explained its provisions to them. The decree was clearly in accord with the weight of the evidence.

As this proceeding is not an action for recovery of debts but a suit for partition in accordance with the terms of an express trust, brought shortly after the death of the life tenant, the Statute of Limitations can have no application. Deduction of amounts represented by the promissory notes was expressly provided for in computing defendants' interests as beneficiaries. As the trust for present purposes must be treated as if the owners had created it directly in the deed of conveyance, their interests as designated therein could not now be disputed even if the debts themselves had been barred by the statute at the time the trust was created.

Appellants further contend the Appellate Court erred in not ordering the costs of the reference to be paid by defendants. We think, under the circumstances presented by this record, this position is well taken. The master concluded that the costs should be taxed against defendants, and the circuit court should have overruled objections to this portion of his report. The decree adjudicated the rights of the parties in the property substantially in accord with the allegations of the complaint, and the lengthy hearing before the master, upon the issues concerning deductions of defendants' debts, was made necessary by defendants' contentions which were properly held to be without merit.

While the apportionment of costs is largely in the discretion of the court in chancery cases, it should, nevertheless, be based upon some equitable grounds. (*Chilvers* v. *Race,* 196 Ill. 71.) Plaintiffs were compelled to engage in long and costly litigation to defeat claims entirely devoid of any equitable basis, and they should not be required to pay any part of the costs of the reference.

The judgment of the Appellate Court is reversed and the cause remanded to the circuit court with directions to modify the decree so as to require defendants to pay the costs of reference.

*Reversed and remanded, with directions.*