THE LOUIS COOK MANUFACTURING CO. v. RANDALL & DICKEY.

1. **Practice:** EVIDENCE: ORDER OF INTRODUCTION. A cause will not be reversed merely because secondary evidence of the contents of a written contract was admitted before the loss of the writing was established, when a sufficient foundation for the secondary evidence was afterwards supplied by the testimony of the adverse party.

2. **Contract:** SECONDARY EVIDENCE TO ESTABLISH. Where plaintiff succeeded to the business of C., and undertook the performance of a contract previously entered into between C. and defendants, and, in an action between plaintiff and defendants growing out of the transaction, plaintiff and C. denied the existence of the contract, it was proper to allow defendants to establish the execution and terms of the contract by secondary evidence.

3. **Corporation:** ULTRA VIRES. It is not *ultra vires* for a corporation organized for the manufacture of certain articles to assume to fill a contract made with another for furnishing such articles.

4. **Contract:** TERMS OF ASSUMED BY THIRD PARTY. Where defendants ordered goods of C. on certain terms, and plaintiff assumed to fill the order in C.'s stead, and shipped the goods to defendants, who accepted the same, plaintiff and defendants became parties to the original contract, and were both bound by the terms thereof.

5. ———: TO FURNISH GOODS ON CREDIT: MEASURE OF DAMAGES FOR BREACH OF. Where plaintiff, doing business at Cincinnati, Ohio, assumed to furnish on credit to defendants vehicles for sale at Des Moines, Iowa, with the sole privilege to sell such vehicles in certain counties, the element of credit became an important element in determining the damages to which defendants were entitled upon a breach of the contract; and the measure of defendants' damages for such breach was the difference in the contract price of the vehicles and their market value in the city of Des Moines, with the exclusive privilege of selling such vehicles in the counties named in the contract, less the expense of bringing the vehicles from Cincinnati and fitting them up for the Des Moines market.

6. ———: LANGUAGE OF TRADE: EVIDENCE. Where in a contract language is used which has a peculiar meaning understood by the trade, that meaning must be followed in enforcing the contract, and evidence of such meaning is properly admissible.

*Appeal from Polk Circuit Court.*

FRIDAY, DECEMBER 7.

ACTION at law upon an account for certain buggies and

other goods ordered by defendants of plaintiff. There was a judgment upon a verdict for plaintiff for a part of the claim, from which it appeals. The facts of the case are stated in the opinion.

*William Phillips*, for appellant.

*Nourse & Kauffman*, for appellees.

BECK, J.—I. The petition alleges that plaintiff is a corporation existing under the laws of the state of Ohio, and succeeded to the business of Louis Cook, in the manufacture and sale of buggies and other goods. That defendants, who had made purchases of Louis Cook, ordered from him certain goods. As the plaintiff had succeeded to his business, the order was by him delivered to plaintiff to be filled, which was done. This action is brought to recover the value of the goods delivered to defendants by plaintiff under such order.

The defendants in their answer admit the order for the goods and the receipt thereof, but allege that the purchase was made under a contract with Louis Cook, to the effect that buggies and other goods ordered should be furnished at prices named, upon thirty, sixty, ninety, or one hundred and twenty days, when ordered in car load lots, and that defendants were to have the exclusive right to sell the articles manufactured by plaintiff, in Polk and five adjacent counties of the state. The contract was expressed in a written order given by defendants, which was accepted by Louis Cook. Under this contract, defendants ordered the goods mentioned in the account sued upon, which were furnished to defendants by plaintiff under an order to Louis Cook.

The answer, admitting the receipt of the goods specified in the account sued on, alleges that the contract is in the possession of Cook or plaintiff, or is lost or destroyed; that plaintiff assumed its performance, but did violate its conditions by selling like goods described therein to other persons within

the counties mentioned in the contract; by refusing to sell upon the time provided for in the contract; by refusing to sell to defendants more than one car load at one time; and by refusing to ship to defendants goods by the car load until the bills for prior shipments to them had been paid. It is alleged that, by reason of these breaches of the contract between the parties, defendants sustained damages to the amount of $4,000, which they plead as a counter claim to plaintiff's action.

Plaintiff in its replication denies that defendant and Louis Cook entered into a contract of the character alleged in defendants' answer, and denies that any such order as is pleaded therein was given by defendants to Louis Cook, or ever existed. It admits that it succeeded to the business of Louis Cook, but denies that it assumed his contracts and liabilities set up by defendants. All other allegations of the answer are denied.

Other allegations of the pleadings need not be here recited. It will be observed that the account sued on is admitted, and the only issues between the parties involve the counter claims of defendants.

II. We will consider the objections to the judgment relied upon by plaintiff in the order of their discussion by 1. PRACTICE: evidence: order of introduction. counsel. It is first objected that there was no competent evidence submitted at the time tending to establish the contract. The contract itself was not introduced in evidence. Defendants testified that it was reduced to writing in the form of an order written by Cook and signed by defendants, which was orally accepted by Cook before he transferred his business to plaintiff. It was kept by Cook, or left in his possession. Upon this evidence defendants were permitted to prove the contents of the instrument. If it be conceded that, when this proof was offered, the evidence was insufficient to show the loss of the instrument, or that proper efforts were not made to cause its production at the trial by Cook, yet, in view of the answer of

plaintiff, denying the existence of the contract, and the testimony of Cook subsequently given, that he had not at the time and never had possession of the instrument, and that it in fact never had an existence, there is no prejudicial error in admitting proof of its contents at the time such evidence was admitted. Cook's evidence, if given at or before the time the secondary proof was admitted, would have been sufficient to authorize it. As he subsequently supplied the required proof, no prejudice resulted from admitting the secondary evidence at the time it was introduced. We will not reverse a case upon the ground that evidence is not admitted in the proper order, or for the reason that a fact which should be proved in the first instance by one party is established by the testimony of the other.

Counsel for plaintiff insists that, as Cook was not a party to the suit, no parol evidence of the contents of the instru-

2. CONTRACT: secondary evidence to establish.

ment was competent therein. We think this position applied to the facts of this case is not supported by the authorities cited by counsel, nor by principle. Under the pleadings of the case, and the evidence of defendants, their theory of the case is that the plaintiff by undertaking to perform Cook's contracts, as successor to his business, became bound by the contract with them; that it in fact became plaintiff's contract. It was under this theory necessary for defendants to establish, first, that the contract was entered into, and then to show that plaintiff assumed its performance. In order to establish the original contract, they were compelled to resort to secondary evidence, as we have just shown. The contract was in fact the contract of plaintiff, having so become by his undertaking to perform it. As its existence was denied by plaintiff and by Cook, it was a proper subject of secondary evidence, as we have above shown.

III. It is insisted that the plaintiff, under its charter or articles of incorporation, had no authority to assume the per-

3. CORPORATION: ultra vires.

formance of the contract with Cook. The business of plaintiff is the manufacture and sale of

buggies and other articles.   Of course, it has authority to
accept orders for such goods upon terms usual in such busi-
ness.   It surely had authority to assume the filling of an
order accepted by Cook, upon the terms made by him, which,
it appears, was in accord with the usual course of the trade.
This is just what plaintiff did in this case.

IV.   It is said that the cross petition and proof do not
show that plaintiff agreed to perform Cook's contract, and
that there is no agreement between plaintiff and
defendants proved.   Defendants gave the order to
Cook under the contract with him; plaintiff as-
sumed to fill it, and shipped the goods for which suit is
brought, which were received and accepted by defendants.
Surely the law will imply a contract between plaintiff and
defendants.   The plaintiff, by filling the order, became, as we
have seen, bound by its terms.   Defendants, by accepting the
goods, became bound to plaintiff according to the conditions
of the contract which plaintiff had assumed.   The point
demands no further attention.

*4. CONTRACT: terms of assumed by third party.*

V.   The circuit court gave to the jury an instruction in
the following language:

"In determining whether or not the plaintiff *assumed to
perform* Louis Cook's part of the alleged contract with
defendants, you should take into consideration *the relation
of the parties, the manner in which the business was done,
all their acts and declarations, the manner in which orders
were received, shipments made, and all other facts and cir-
cumstances fairly tending to show what the agreement was.*"

This instruction is, we think, correct.   The fact that
plaintiff was the successor of Cook in business is a matter
pertaining to their relations, and its acceptance of orders
given originally to Cook pertains to the manner of their
business.   The acts and declarations of these parties, so far
as shown by the evidence, are contemplated by the instruc-
tion.   These, with the other matters referred to, were properly
considered by the court as facts from which the jury were
authorized to find that plaintiff assumed Cook's contract.

VI. The circuit court directed the jury in the following language: "If upon inquiring, as before directed, you find that the defendants are entitled to damages, you will then proceed to determine the amount you will allow. The measure of defendants' damages for a refusal to sell them vehicles under the contract is the difference in the contract price of the vehicles refused to be furnished and their market value in the city of Des Moines, with the exclusive privilege of selling that make in the counties named, less the expense of bringing said vehicles from Cincinnati, Ohio, and fitting them up for the Des Moines market."

5. CONTRACT: to furnish goods on credit: measure of damages.

The views of plaintiff's counsel upon the subject of the measure of damages are expressed by an instruction asked by him at the trial and refused. It is as follows:

"That if you find there was a contract existing between defendants and Louis Cook, such as alleged in the petition, and you find that the plaintiff agreed to perform the same, and undertook such performance, and you find that it refused to sell the defendants the goods named on the time specified, but was ready and willing to furnish said goods to defendants as they wanted them, and offered so to do, for cash, or in car lots on time or credit, then the defendants should have taken said goods and paid cash therefor, or taken the same on credit, one car at a time, and plaintiff would be liable only for the interest at six per cent for the time credit was to be given."

The rulings of the circuit court upon these instructions are correct. The object of defendants in making the contract for time was to be able to deal in the goods upon credit. Now, to say that credit is refused, when the contract provides that it shall be given, the defendants being required to purchase for cash, is to deprive them of the very benefits the contract contemplates they shall receive. It is true, as is said by counsel for plaintiff, that defendants were required to do "all they reasonably could do to prevent damages."

But to require them to pay cash when they had contracted for credit, is not within the bounds of reason. The condition as to credit was an important and essential provision of the contract. The law will not presume that defendants could have paid cash for the goods, and it surely did not require them to do what they are not shown to have been able to do.

VII. The plaintiff insists, and requested the circuit court to so instruct the jury, that the measure of defendants' damages is the difference between the contract price and the value of the goods at Cincinnati. The position is not correct. The buggies were purchased for sale in Des Moines, and, while plaintiff by the terms of the contract was to deliver them upon the cars at Cincinnati, this did not imply anything more than that defendants were to pay transportation to Des Moines. But if defendants acquired the absolute property in the buggies when they were delivered to the carrier at Cincinnati, plaintiff's contract contemplated that defendants were to sell them at Des Moines. The prices at the last named city control in fixing the measure of damages.

VIII. The contract and order for the buggies specified "top buggies with poles." A witness engaged in the trade was permitted to testify against plaintiff's objec-
6. CONTRACT: tion that these words in the order would be
language of
trade: evi-
dence.        understood to mean a common grade of buggies.
The evidence is competent. The language had a meaning understood by the trade, and that meaning must be adopted in enforcing the contract. It is very common for the courts thus to obtain the true meaning of the language of contracts.

IX. Numerous objections are made to instructions given, which are really but criticisms upon the language used therein. By these criticisms counsel seeks to interpret the instructions so that they are made to express thoughts other than those intended by their plain language, which expresses

rules in harmony with the law. The consideration of these criticisms would be without profit to the parties.

X. The evidence was conflicting, and there is no ground for disturbing the verdict as being unsupported by the evidence. The judgment of the circuit court will be

AFFIRMED.