W. C. PAGE, Appellant, v. CLYDE R. PARKS, as Administrator and individually, Appellee.

No. 46049.

NOVEMBER 24, 1942.

James E. Coonley and Harvey Uhlenhopp, both of Hampton, for appellant.

H. L. Bump, of Des Moines, and Leming & Hobson, of Hampton, for appellee.

MILLER, J.—Plaintiff's petition asserts that he is a surviving brother and heir of Eda J. Runyan, who died February 17, 1933; she was the wife of James C. Runyan, who died November 1, 1938; in 1928, Runyan made a will whereby he bequeathed and devised all of his property to his wife, Eda J. Runyan; the will became lost, diligent search has been made, but it cannot be found; Runyan did not revoke said will nor make a new one. The prayer was that the will be admitted to probate. The answer admitted that Eda Runyan was the wife of James C. Runyan until her death in 1933, and that Runyan died November 1, 1938, but denied all other allegations of the petition.

D. B. Hunt testified that sometime in 1928, 1929, or 1930, he drew a will for James C. Runyan, which left all of his property to his wife; the will was executed, properly witnessed, and was left in the safe of Hunt's bank, the Geneva Savings Bank; the bank closed in 1933; in Hunt's judgment, Runyan's will was in the safe when the bank closed; April 7, 1932, Hunt drew a will for Mrs. Runyan leaving her property to her husband; she did not leave it at the bank; he had no recollection as to its being left at the bank.

On August 6, 1938, the examiner in charge of the closed bank delivered to the clerk of the district court at Hampton several wills that had been in the safe at the bank. Among

them was an envelope, that had been opened, which contained Mrs. Runyan's will. No will of James C. Runyan was filed.

E. A. Schemmel was examiner in charge of the bank from February 1934, to March 1936. He testified:

"I have no recollection of turning a will or anything over to Mr. Runyan or even meeting him after his loan was cleared. The custom was to take a receipt from somebody that took a will. There was always careful and proper identification if somebody claimed a will. We checked through some receipts and correspondence and stuff of that kind in Mr. Ralph Stuart's basement this noon to see whether there was any will of James Runyan. There was nothing, not even any receipt or record showing that any will had been returned to him."

B. H. Moore, who preceded Schemmel as examiner in charge, testified:

"I didn't give Mr. Runyan a will at any time."

Carl Mansfield, who succeeded Schemmel, testified:

"I don't believe I ever met James Runyan. Never, to my knowledge, did I give a will back to him. If I did I would have taken a receipt. I have searched through the records in the Clerk's Office and Mr. Stuart's office, or basement, for all the records of the bank that I know of for Mr. Runyan's will and found neither a will or receipt. I found other receipts and other valuable papers, but there is none for Mr. Runyan's will."

The court's findings include the following statements:

"The cases governing the establishment of lost wills are innumerable; but apparently the last of the series and the most elaborate of them all, is that of Goodale vs. Murray, 227 Iowa, 843. In this case, it is laid down as a universally applicable rule that to establish a lost will, it is encumbent upon the proponent to prove by clear, satisfactory, and convincing testimony, (1) its execution; (2) its loss; (3) that the presumption of its intentional destruction by the testator has been rebutted; and (4) its contents.

"The first, second, and fourth of these propositions, if not actually conceded, are established by the evidence almost beyond

a reasonable doubt; and the third alone presents the controversial subject matter of the case.

"That the will has disappeared is certain; but we are left largely if not entirely in the realm of uncertainty and conjecture as to what has happened to it. I can guess quite as easily that some time in the intervening years the decedent must have procured the will and destroyed it,—as the contestant claims,—as to guess that in the mess and confusion of the receivership the will unintentionally dropped out of sight and is now a legally 'lost' will,—as claimed by the proponent. In this circumstance the result is inevitable. Of the two alternatives, a heavy burden rests on the proponent both to prove the latter and to disprove the former, and in both I think it must be said that he has failed.

"Indeed the circumstances throughout are against him. The decedent's property, it appears, originated exclusively in his family. It was of course perfectly natural and appropriate that he should leave it to his wife in the event of her survivorship. But she predeceased him, and it was equally natural if not inevitable that upon her death the will had served its purpose, and should be revoked or destroyed. In as much as I have to indulge in a pure conjecture, as already said, as to the nature of such disappearance, I see no escape from guessing that upon the wife's death, he withdrew and intentionally destroyed it,— as anyone in his circumstances naturally [would],—rather than to leave it to the uncertain operation of Section 11861 aforesaid." (The antilapse statute.)

Pursuant to the foregoing findings, decree was entered dismissing the petition. Proponent appeals.

As above indicated, the sole question presented herein is whether, under the rules announced in Goodale v. Murray, 227 Iowa 843, 289 N. W. 450, 126 A. L. R. 1121, the presumption of revocation by intentional destruction has been overcome. The arguments of counsel devote considerable space to the question of the burden of proof.

Contestants assert that, even though the execution of a will is proven, if the will is not found after testator's death, the presumption obtains that the will was revoked by intentional

destruction by the testator, citing Goodale v. Murray, supra; In re Estate of Thorman, 162 Iowa 237, 144 N. W. 7, Ann. Cas. 1916B, 484; Thomas v. Thomas, 129 Iowa 159, 105 N. W. 403. Accordingly, it is contended that the burden is upon proponent to overcome such presumption by clear, satisfactory, and convincing proof, citing Thomas v. Thomas, supra, and McCarn v. Rundall, 111 Iowa 406, 82 N. W. 924. The authorities sustain the contention.

Proponent's position is that the contentions above set forth do not apply herein because of the rule that, where a will is placed in the custody of another, the burden is cast upon contestants to prove that the will was returned to testator before the presumption of revocation will obtain, citing 68 C. J. 994; 28 R. C. L. 385; Miller's Will, 49 Or. 452, 90 P. 1002; Gfroerer v. Gfroerer, 173 Ind. 424, 90 N. E. 757; Williams v. Miles, 68 Neb. 463, 94 N. W. 705, 96 N. W. 151, 62 L. R. A. 383, 110 Am. St. Rep. 431, 4 Ann. Cas. 306; Schultz v. Schultz, 35 N. Y. 653, 91 Am. Dec. 88; Lane v. Hill, 68 N. H. 275, 44 A. 393, 73 Am. St. Rep. 591; Mann v. Balfour, 187 Mo. 290, 86 S. W. 103; Snider v. Burks, 84 Ala. 53, 4 So. 225; In re Robinson's Estate, 149 Wash. 307, 270 P. 1020; McElroy v. Phink, 97 Tex. 147, 76 S. W. 753, 77 S. W. 1025; Aschenbeck v. Aschenbeck, Tex. Civ. App., 62 S. W. 2d 326; Rape v. Cochran, Tex. Civ. App., 217 S. W. 250; In re Calef's Will, 109 N. J. Eq. 181, 156 A. 475, In re Calef, 111 N. J. Eq. 355, 162 A. 579; Charles v. Charles, 313 Mo. 256, 281 S. W. 417; In re Ross Estate, 199 Cal. 641, 250 P. 676; Allen v. Scruggs, 190 Ala. 654, 67 So. 301.

One difficulty with proponent's contention is that many of the authorities relied upon include in the rule a feature that he overlooks or ignores. For example, in 28 R. C. L. 385, supra, the text states:

"It has been said, however, that the evidence to overcome the presumption that a lost will was destroyed by the testator animo revocandi must be clear, satisfactory, and convincing. * * * But the presumption is entirely overcome and rebutted when it appears that upon the execution of the will it was deposited by the testator with a custodian, and that the testator

did not hereafter have it in his possession *or have access to it.*" (Italics supplied.)

Here the testimony shows that deceased left the will with Hunt. But the evidence also shows that deceased had access to it. The dispute arises over whether he availed himself of such access. The witnesses for proponent testified that they had no recollection of his having done so. Such testimony is by no means conclusive. Eckert v. Century Fire Ins. Co., 147 Iowa 507, 510, 124 N. W. 170; Pranger v. Pranger, 182 Iowa 639, 644, 164 N. W. 607; Rance v. Gaddis, 226 Iowa 531, 545, 284 N. W. 468. Added to this is the fact that Mrs. Runyan's will was clearly shown to have been left at the bank and examined by someone. Hunt had no recollection of her having left her will at the bank. He was quite sure that she did not. No one recalled the circumstances under which her will was examined before Mansfield filed it with the clerk on August 6, 1938. Yet the clerk insisted upon stating in the receipt he gave to Mansfield:

"The Eda J. Runyan will had been opened at time of delivery to the Clerk. It was open at the time of finding in safe at Geneva Savings Bank, Geneva, Iowa."

In addition to the foregoing there is no testimony, as there usually is in the case of a lost will, regarding declarations of the decedent. The record herein is silent on that issue. Also, the wife having died in 1933, it would be only natural that, between the time of her death in 1933 and August 6, 1938, James Runyan visited the bank, examined his wife's will, and destroyed his own with intention to thereby revoke it. There is no claim that the two wills were mutual or reciprocal wills; had they been such, the death of Eda Runyan would have rendered James Runyan's will invalid. Anderson v. Anderson, 181 Iowa 578, 585, 164 N. W. 1042. However, the wills were quite analogous to mutual and reciprocal wills, so much so that it was only natural for James Runyan, after the death of his wife, to conclude that his will had served its purpose and was no longer desirable. The trial court was thus persuaded. So are we.

By reason of the foregoing we do not deem it necessary to

decide upon any arbitrary rule as to the burden of proof, nor to determine the controversy on the failure of one side or the other to sustain such burden. Viewing the evidence as a whole, we are in accord with the position taken by the trial court.

The decree is—Affirmed.

All JUSTICES concur.