IN RE ESTATE OF MAURICE E. FARLEY.

KATIE J. FARLEY, Appellee, v. SARAH I. BRAINARD, Guardian, Appellant.

No. 46899.

OCTOBER 15, 1946.

Crary & Crary and A. C. Hatt, all of Sioux City, for appellant.

Griffin & Griffin, of Sioux City, for appellee.

PER CURIAM.—This is a rather unusual will contest. Maurice E. Farley, testator herein, was for many years a member of the police department at Sioux City, Iowa. He was twice married. A daughter by his first marriage, Mary Lucille, mar-

ried George Brainard. The first wife and said daughter are deceased. Patricia J. Brainard, the only child of Mary Lucille, survived testator and, as his granddaughter, is his only heir at law. Sarah I. Brainard, Patricia's paternal grandmother, as legal guardian for Patricia, is the contestant herein. After the death of his first wife Farley married Katie J. Farley, who is the proponent herein. It would seem to be advisable to make a brief statement of the essential facts shown by the record before stating the legal questions that arise therefrom.

Proponent married decedent on June 18, 1919. Ten years later, February 19, 1929, the will that was offered for probate herein was executed by decedent in the office of George Yeaman, a lawyer, at Sioux City. At the same time proponent executed her own will. The two wills contained reciprocal provisions. Farley's will bequeathed $2,000 to his daughter, Mary Lucille Brainard (contestant's mother), $2,000 to Mrs. Ernestine Hale (proponent's mother), and the residue of the estate was devised to his wife, the proponent, Katie Farley, who was also nominated as executrix. Katie's will was not introduced in evidence. Mr. Yeaman identified Mr. Farley's will and testified:

"That is the will I prepared for Maurice Farley. Maurice signed it in my office that day, 19th day of February, 1929 * * * and that is Maurice Farley's signature. * * * I saw the two witnesses also sign their names at that time. Maurice Farley, himself, declared that to be his will. Kate Farley also signed a will at the same time. She signed another will similar to that, as I remember it, and the same two witnesses witnessed her will. * * * Well, I mean by that one willed the property to the other and with the exception that Mr. Farley made a couple of bequests to other parties and gave to his wife Kate the balance of his estate and requested that she be made administrator or executor without bond. That is the way I remember, and when she read her will and signed it the same provision, as I understand it, was made, that she willed her property to him and made him executor without bond to carry out the terms of the will."

Mrs. Farley testified:

"I heard the testimony of Mr. Yeaman about I and Mr.

Farley going to his office; about February 19, 1929, I executed a will in the office of Geo. Yeaman; at the time I made that will I was the possessor of some property in my own right. Approximately, I owned a home at 1906 West Florence and the lots, and part of the home at 313 South Turner and a partnership in our home. My will of February 19, 1929, remained in effect until the 21st day of July, 1944."

On September 18, 1942, proponent and decedent were divorced. Under a stipulation for division of their property, approved by the decree, Mrs. Farley received two Sioux City properties, the household goods, and $8,500 cash. The stipulation provided further:

"Upon fulfillment of the covenants of the said Maurice E. Farley herein above set forth the said Katie J. Farley agrees that she will make no further claim on the said Maurice E. Farley for any alimony or support money and does by this Stipulation release the said Maurice E. Farley from any future liability for her support and maintenance, and does hereby release and relinquish any right, title, or interest in and to any bonds and securities heretofore owned by Maurice E. Farley and Katie J. Farley."

On July 6, 1944, Farley executed a new will in the office of George H. Flynn, a lawyer, in Sioux City. This will was not offered for probate; it was not found after Farley's death; counsel on both sides appear to agree that it is presumed to have been destroyed by Farley before his death. A copy of this will was produced by Mr. Flynn. He testified to its proper execution as a will. The copy of the will declared it to be Farley's last will and testament and that he does "hereby revoke all former wills * * * which are hereby declared to be null and void." This will provided for payment of debts, directed the executors to set aside $200 for masses, and bequeathed all the residue to Farley's granddaughter, Patricia, contestant herein, with a request that she pay her grandmother $350. Patricia and her grandmother were nominated as executrices.

Mr. Yeaman testified that shortly after Farley's death he had a conversation with Mrs. Farley in which she told him

that at the time of the divorce she had destroyed her will and had given Farley his will. Mrs. Farley denied making any such statement.

On July 26, 1944, Mrs. Farley executed a new will in the office of Mrs. Edith V. Forsling, a lawyer, in Sioux City. Mrs. Forsling practiced law as Edith V. Cover, her name before she married Judge Forsling. She had been the attorney for Mrs. Farley in the divorce proceedings and appeared for her when the will of Mr. Farley was offered for probate. Contestant objected to the competency of Mrs. Forsling as an interested party under the dead man statute, section 622.4, Code, 1946. Mrs. Forsling had withdrawn as an attorney in this cause and the court overruled the objection.

Mrs. Forsling testified that at the time of the divorce proceedings, when the stipulation for their property settlement had been signed, Mr. Farley, in the presence of Mrs. Farley, asked Mrs. Forsling if it would be all right to let their two wills stand. She assured him that their wills would be good as they were and he said, "Very well, let them stand."

Mrs. Forsling testified that the first draft of Mrs. Farley's new will was prepared July 21, 1944; it was executed on July 26, 1944; before it was signed it was presented to Mr. Farley and, in the presence of Mrs. Farley, Mrs. Forsling asked him if it was the way he wanted it and he said, "Yes, that is fine, Edith"; the will was then executed and Mr. Farley was given a copy of it; Mrs. Forsling then asked Farley what he expected to do about his will and he said, "That is fine and just let that stand as it is"; thereafter Mrs. Forsling destroyed the will that Mrs. Farley had made in 1929, at the direction of Mrs. Farley; Mr. Farley remarked, "You know, neither Katie nor I are very well, and I think that when we both get on our feet we will go back together."

Mrs. Farley's will of July 26, 1944, revoked all prior wills, provided for the payment of debts, bequeathed certain jewelry, china, and silver to a niece, $500 each to an aunt and uncle, devised the residue to three sisters, subject to a life estate therein to her former husband, Maurice Farley, nominated Farley as executor, and designated Edith V. Cover as attorney for the estate.

The foregoing are merely the high lights of the evidence. As heretofore stated, they have been reviewed to afford the background for a statement of the legal questions presented herein. Other evidence will be referred to later in connection therewith.

At the close of the evidence both sides made motions for directed verdicts. Contestant's motion asserted: On the whole record the evidence was insufficient to sustain a verdict for proponent; the will that is offered for probate was revoked by operation of law about the time of the divorce proceedings in 1942; the will was revoked by the later will of Farley in 1944; proponent is basing her right to probate of the will on an alleged oral contract and her remedy is for specific performance or damages in case of a breach thereof. This motion was overruled.

Proponent's motion asserted: Contestant has failed to sustain the burden of proof resting upon her and the evidence would not sustain a verdict for contestant; proponent and testator made a contract for reciprocal wills, which was performed by both parties; Farley's will was not revocable except after notice to Mrs. Farley and no such notice was given; the evidence of revocation is not clear, satisfactory, and convincing; if the will of July 6, 1944, constituted a revocation, it is shown to be lost and it is presumed to have been destroyed by testator with intention of revoking it and, under the undisputed evidence, it was the intention of testator to revive his original will of February 19, 1929; the overwhelming evidence is that he repeatedly reaffirmed his will of 1929 and any verdict to the contrary would be wholly unsupported by the evidence. This motion was sustained.

The will of February 19, 1929, was admitted to probate. Contestant appeals to this court. The errors assigned here do not relate to the contestant's motion for a directed verdict. They challenge the ruling on proponent's motion and the competency of Edith V. Forsling as a witness.

I. In some jurisdictions where both sides move for directed verdicts and do nothing more they thereby assume the facts to be undisputed. However, in Iowa it is well established that the mere making of motions for directed verdicts

by both parties does not amount to a concession that the facts are undisputed; there must be an express waiver of the right to have the jury determine disputed questions of fact. Bukowski v. Security Ben. Assn., 221 Iowa 416, 421, 265 N. W. 182, and cases cited. There was no such waiver herein. Accordingly, in determining whether the court was correct in sustaining proponent's motion for a directed verdict, it is necessary for us to determine whether there was a disputed question of fact, material to a decision herein, for the jury to pass upon. In determining such question we, of course, must view the evidence in the light most favorable to contestant. When the evidence is so considered, we are of the opinion that there was a disputed question of fact for the jury to pass upon.

II. The testimony of Mr. Yeaman was to the effect that the two wills executed by Maurice Farley and his wife, Katie, in Yeaman's office on February 19, 1929, were mutual, reciprocal wills. Counsel on both sides have so treated his testimony. Proponent contends that, such being the case, Farley could not revoke his will without notice to Katie and as her testimony that no notice thereof was given to her stands undisputed Farley's attempted revocation thereof by his will of July 6, 1944, was ineffective. Contestant contends: Farley's will of July 6, 1944, did in law revoke his will of February 19, 1929, and Katie's remedy under the contract relating to mutual and reciprocal wills is for specific performance or damages; the presumed destruction and revocation of the will of July 6, 1944, by Farley would not revive the will of February 19, 1929, unless it was his intention so to do and the question as to his intention in that respect is a disputed one of fact for the jury to decide. Proponent undertakes to meet this last proposition by contending that the fact that Farley intended to revive his will of February 19, 1929, is shown by evidence that is so persuasive that no other reasonable conclusion could be drawn therefrom. We are of the opinion that contestant's position is sound and that the trial court erred in sustaining proponent's motion for a directed verdict.

III. While, as above stated, contestant asserted in her motion for a directed verdict that the divorce proceedings constituted a revocation of the 1929 wills by operation of law,

the court's ruling on her motion is not made the basis for any assignment of error in this court so that that question is not before us for decision. Her only contention on that issue here is that the circumstances of the divorce proceedings were proper matters for consideration by the jury on the issues of fact herein.

IV. Contestant contends that Farley's will of July 6, 1944, did constitute a revocation of the 1929 will. Reliance is had upon the case of Blackett v. Ziegler, 153 Iowa 344, 353, 133 N. W. 901, 904, 37 L. R. A., N. S., 291, Ann. Cas. 1913E, 115, wherein we stated:

"A will once executed may be revoked by the execution of an instrument of revocation or cancellation, and this instrument may be a new will, containing an express clause of revocation, or by an instrument of revocation alone.

"Upon the execution of such an instrument, the prior will is revoked, no matter whether the instrument of revocation be probated or not. It is the execution of the instrument in proper form which effectuates the revocation. This view is sustained by reason and the weight of authority, although disapproved by a minority of the courts. [Citing cases.]"

While the foregoing statement recites that there is a division of authority on the question, we have not been cited to any authorities to the contrary. An extensive annotation appears in 94 A. L. R. 1027, wherein the author states:

"Authority for the rule that a revocation of a will may be established by proof of the execution of a later lost will containing a revocation clause is not confined to the comparatively few cases in which the question has been made the subject of a direct holding. What is perhaps even more convincing authority for the rule is the fact that, in dealing with the question of the revocation of a will by a later will, the courts seem universally to have assumed that proof of the execution of a later will containing a revocation clause is sufficient, without more, to prevent the probate of an earlier will. This almost universal assumption shows it to be the general understanding of the courts that it is not necessary to prove the

other contents of a will in order to effect a revocation, where it is shown that the will contained a revocation clause."

From a study of the authorities supporting the foregoing statement we are satisfied that the rule announced by us in the Blackett case above quoted should be adhered to. Hence the execution of the will of July 6, 1944, containing as it did an express revocation of all former wills, revoked the 1929 will unless such effect is obviated by other matters later discussed.

V. As heretofore stated, proponent contends that the two 1929 wills were mutual and reciprocal and that neither testator could revoke his will during the lifetime of both without notice to the other. The facts that Farley and his wife executed their wills simultaneously in Yeaman's office and that the two wills contained reciprocal provisions were evidence of a basic contract to execute mutual wills under repeated pronouncements of this court. Maurer v. Johansson, 223 Iowa 1102, 1107, 274 N. W. 99, and cases cited therein. The reciprocal provisions constitute the consideration for the contract. Maloney v. Rose, 224 Iowa 1071, 1075, 277 N. W. 572. Where the consideration is adequate the duty is imposed upon each to give notice to the other of any revocation made during the life of both. Campbell v. Dunkelberger, 172 Iowa 385, 389, 153 N. W. 56; Baker v. Syfritt, 147 Iowa 49, 56, 125 N. W. 998. Such a revocation without notice would constitute a breach of the contract pursuant to which the wills were executed.

The rule seems to be well established that as such a revocation constitutes a breach of the contract relief is to be afforded on that basis but the revoked will cannot be probated. In Doyle v. Fischer, 183 Wis. 599, 606, 198 N. W. 763, 765, 33 A. L. R. 733, the court stated:

"It should be borne in mind that it is the contract and not the will that is irrevocable. The authorities generally hold that the will may be revoked, but the contract stands and will be enforced by equity if it be a valid contract and such enforcement is necessary for the prevention of fraud."

Other cases to the same effect are discussed in 43 A. L. R.

1025 et seq. This rule was recognized by us in the recent case of In re Estate of Johnson, 233 Iowa 782, 10 N. W. 2d 664, 148 A. L. R. 748, wherein a joint will had been revoked and equitable proceedings for specific performance were instituted. Relief was denied because of inadequate consideration to support the contract that was sought to be enforced. We are satisfied that the remedy in a case of revocation of a joint or mutual will without notice is an action for damages for breach of contract or for specific performance and that the revocation will prevent the probate of the revoked will. The issues herein are limited to the question whether the 1929 will should be admitted to probate.

VI. This brings us to the question whether the destruction of the 1944 will by Farley operated to revive his 1929 will. As above stated, the 1944 will was not found after Farley's death. Counsel on both sides proceed on the theory that the presumption obtains that the will was revoked by intentional destruction of it by the testator. In Page v. Parks, 232 Iowa 879, 883, 6 N. W. 2d 298, we held that the evidence to overcome such presumption must be clear, satisfactory, and convincing. Without considering such requirement, counsel's assumption is correct because there appears to be no evidence to overcome such presumption.

We must assume therefore that Farley destroyed his 1944 will with intention to revoke it. The next question is, Did that act revive his 1929 will? The rule to be applied is given by the case of Blackett v. Ziegler, supra, 153 Iowa 344, 354, 355, 133 N. W. 901, 904, 37 L. R. A., N. S., 291, Ann. Cas. 1913E, 115, wherein we stated as follows:

"In the instant case, there was an express revocation of the former will in the one executed in the year 1904. But this second will, containing the revocatory clause, was destroyed by burning. The first will had not been destroyed, but had been kept by the testatrix, and at the time of the burning of the second there is no doubt, under the testimony, that she intended to revive the first. To be logical and consistent, we must hold that the second will, when executed with its clause of express revocation, revoked or canceled the first will, and

we are required now to formulate a rule with reference to the revivor of the first will by reason of the destruction of the instrument of revocation. The safest doctrine, we think, is that announced by the ecclesiastical courts of England, to the effect that it is a question of testator's intent, to be gathered from admissible parol testimony. It would not do to hold that the former will was absolutely revived by the destruction of the second, for that may have been entirely contrary to testator's intent. Having made the second will, and laid aside and, perhaps, forgotten the first, it would be dangerous to hold that the destruction of the second *ipso facto* revived the first, no matter if testator did not so intend. On the other hand, it would in many cases frustrate testator's intent, were we to hold that the former will could only be revived in such case by a re-execution or a republication thereof after the destruction of the second will, which had not been admitted to probate, and which could not be, because of its destruction. There is no danger, then, it seems to us, in holding it to be a question of testator's intent, to be arrived at from all the circumstances in the case. Testimony to establish such intent could only come from disinterested witnesses, and we can perceive of no harm which would result in submitting such question as one of fact.''

The rule announced in the foregoing quotation was expressly followed in the case of In re Estate of Cameron, 215 Iowa 63, 68, 241 N. W. 458. Accordingly, it was a question of fact whether, at the time Farley destroyed the 1944 will, he intended thereby to revive his 1929 will. The precise question before us is whether the evidence was such that the question was one of law for the court or a disputed question of fact for the jury. The trial court held that it was a question of law. We hold that this was error. The issue should have been submitted to the jury for its decision thereon.

VII. Before discussing the evidence as to whether Farley intended to revive his will of February 19, 1929, we shall first determine whether the trial court erred in holding that Mrs. Forsling was a competent witness under the dead man statute. Contestant contends that she was incompetent because of her interest as an attorney for the estate. As Mrs. Forsling

took the witness stand she withdrew from further participation in the case. Her withdrawal was proper without regard to the dead man statute. Ontjes v. MacNider, 234 Iowa 208, 223, 12 N. W. 2d 284, and cases cited therein. After she had withdrawn her only interest in the estate was the reasonable value of her services up to that time. We held, in the cases of In re Will of Kenney, 213 Iowa 360, 363, 239 N. W. 44, 78 A. L. R. 1189, and In re Estate of Rehard, 163 Iowa 310, 312, 313, 143 N. W. 1106, that such an interest should not disqualify an attorney who drew the will in question. While the situation in each of those two cases is not exactly parallel to that here before us, pursuant to the reasoning of those two cases, we hold that there was no error in the ruling that Mrs. Forsling was a competent witness. Such interest as she may have in this case can be considered by the jury in testing her credibility but we do not think that it renders her incompetent under the dead man statute.

VIII. The evidence which induced the learned trial court to hold as a matter of law that when Farley revoked his 1944 will he intended thereby to revive his will of February 19, 1929, was substantially as follows: The will of February 19, 1929, was preserved in Farley's lockbox; had Farley desired to revoke it he could have destroyed it, but he did not; when Mrs. Farley made her will of July 26, 1944, Farley approved it and said he would let his will stand; he must have referred to his 1929 will; various witnesses testified to declarations by Farley shortly before his death to the effect that he and Katie had made their wills in favor of each other and Farley was hoping for a reconciliation with Katie; Farley told Lorraine Wingert, the latter part of September 1944, that he had every intention of leaving everything to Katie in his will; at about the same time he told Spencer Lanning that he had willed everything to Katie; just before his death Farley asked Tom Barron to see Katie and patch things up for him with her; he made a similar request to William McCoy; Mrs. Farley had not heard of her former husband making any will other than his 1929 will prior to his death.

The evidence relied upon by contestant as showing that Farley did not intend to revive his 1929 will was substantially

the following: The parties were divorced in 1942; they made a property settlement whereby Katie received a substantial amount of real and personal property and $8,500 cash and released Farley from all claims for support and against his property; Farley was fond of his granddaughter and they were always on good terms; the will of July 6, 1944, revoked the 1929 will and gave Farley's estate to his granddaughter; Katie had a sweetheart when she divorced Farley; Farley lived with Kate Peterson as his common-law wife for a year prior to and up to the time of his death; there was evidence that Katie showed no affection for Farley; Mrs. Peterson testified that Farley told her, when he went to Edith Forsling's office, that "they got him up to Edith's office to make a will which he said that he wasn't going to do because he had given Katie Farley, his ex-wife, everything in the divorce that he intended to give her and what he had left was to go to Patsy Brainard, his granddaughter"; if Farley were to die intestate his granddaughter, as his only heir, would inherit his estate.

We, of course, cannot set out all of the testimony. The foregoing gives the general tenor of it. Farley's revocation of the 1944 will arises by presumption because of the lack of any evidence as to what was done in regard to it. It is therefore difficult to establish what his intention was when he is presumed to have destroyed the 1944 will. We are unwilling to hold, as a matter of law, that, under the record herein, such destruction was accomplished with the intention of reviving his 1929 will.

The ruling on proponent's motion for a directed verdict was erroneous. The cause is, accordingly—Reversed and remanded.

The foregoing opinion, written by Justice MILLER before his retirement from the court, is adopted as the opinion of the COURT.

HAYS, J., takes no part.