IDABELLE ALLINSON, appellee, v. LORENZ A. HORN, executor of
estate of JOHN W. ALLINSON, deceased, defendant, and
ARLENE JANE OLSON, appellant.

No. 49560.

(Reported in 92 N.W.2d 645)

OCTOBER 14, 1958.

Lund & Lund, of Webster City, for appellant.

Lundy, Butler & Lundy and Donald C. Wilson, all of Eldora, for appellee.

PETERSON, J.—John W. Allinson and Idabelle Harrell were married on August 4, 1944. They were advanced in years. It was a second marriage for both parties, their respective spouses having departed this life. Mr. Allinson had a son and daughter and Mrs. Allinson three daughters, all over twenty-one years of age.

Mr. Allinson was the owner of a modest home and some household goods in Williams, Iowa. Mrs. Allinson had $2000 in cash. She had all the furniture from her first marriage, which she brought to Williams and placed in the home. Part of the

$2000 was used for living expenses, but most of it was used for improvement and modernizing of the home.

In March 1946 both parties went to the office of Prince & Blakey, attorneys at Webster City, and prepared separate but identical wills, each leaving all property to the surviving spouse. On June 1, 1953, without any notice to his wife, John W. Allinson went to the same law office at Webster City and prepared a new will. Mr. Prince had departed this life and Mr. Blakey had moved out of the state. The new will was prepared by Mr. Guthrie. Mr. Allinson did not tell him about the prior wills. In the new will he left one third of his property to his wife, one third to his daughter and one third to his son.

Mr. Allinson departed this life July 20, 1955. The last will made by him was filed and probated and the new executor named by him was appointed. The only substantial property in his estate was the home at Williams which had an estimated value of from twenty-five hundred to three thousand dollars. There was no personal property except some modest household goods and a few personal effects.

Everette J. Allinson, the son of John W. Allinson, executed quitclaim deed to plaintiff as to any interest he had in the home. Plaintiff filed petition in equity against the daughter of Mr. Allinson alleging the two wills simultaneously executed were mutual and reciprocal wills, executed in accordance with agreement between the parties to leave all of his or her property to the surviving spouse and praying for quieting of her title to the home.

Upon trial the court entered findings and decree in favor of the widow. The daughter, Arlene Jane Olson, has appealed.

The only question in the case is whether there was sufficient evidence by competent witnesses to clearly and satisfactorily establish an agreement between Mr. and Mrs. Allinson to leave all property to the survivor under the identical wills executed by them.

I. Mrs. Allinson testified in detail as to the conversation between the parties in the law office at time of execution of the wills. Attorneys for appellant objected to her competency in accordance with section 622.4, Code of 1958. As to such con-

.versation in the office at the time of the execution of the wills she was not a competent witness.

Mr. Blakey, the attorney, was one of the witnesses on the wills. Mrs. Pringle, secretary in the office, who prepared the wills, testified. She was the other witness. She testified as to Mrs. Allinson's will (Exhibit A) as follows: "We brought her in the office there at the same time and witnessed each others signatures. Q. And did you also witness her signature? A. Yes. Q. Would you say the same was done in connection with Exhibit B [Mr. Allinson's will]? A. I imagine so; I am sure so." She stated she could not recall the conversation between the parties.

■ In addition to the testimony of Mrs. Allinson as to the conversation in the law office, not admitted in evidence, she also testified that about six months before the wills were made Mr. Prince was at Williams and called at their home. She heard a conversation between Mr. Prince and her husband, Mr. Allinson, in which she did not take any part. She was competent to testify as to this conversation. Hart v. Hart, 181 Iowa 527, 164 N.W. 849; In re Estate of Newson, 206 Iowa 514, 219 N.W. 305; In re Estate of Stencil, 215 Iowa 1195, 248 N.W. 18. She stated that Mr. Allinson said to Mr. Prince:

"His idea was he wanted it made in such a way we would never have it questioned; he wanted me to have a home and was afraid something might happen, the home might have to be sold like it was on his first marriage, and that worried him because he wanted to leave this home for me so I would always have some place to live. * * * Mr. Prince told him he should; he said you have a nice home here now, your wife has made it into a nice home, brought things from Chicago down here and I think you should have a will made so she will be protected if anything happens to you." Mrs. Allinson also testified: "That is why we did have the two wills drawn."

■ Mrs. Shirley Nell Harrell, daughter of plaintiff by her first marriage, testified she had a conversation with Mr. Allinson in 1949 when only the two were present: "He told me he and Mother had an understanding that if anything should happen to him everything he had would go to her and if anything happened to her everything she owned would go to him, but he realized that the things he had, her personal things, she would want to

be given to us children, and he said he would give me her personal things such as her jewelry and hand painted dishes and things."

Appellant objected to this testimony on the basis of the competency of the witness under section 622.4. Mrs. Harrell was clearly competent to testify as to this conversation with her stepfather. Under such circumstances a daughter can testify as to the statements of a person since deceased. Bird v. Jacobus, 113 Iowa 194, 84 N.W. 1062; Tucker v. Anderson, 172 Iowa 277, 154 N.W. 477, Ann. Cas. 1918A 769. We held in In re Estate of Stratman, 231 Iowa 480, 484, 1 N.W.2d 636, that a son of claimant against an executrix is not incompetent under the statute.

■ The generally accepted meaning of the word "understanding" in the context as used by Mr. Allinson is that this was an agreement. Oftentimes a layman would not use the somewhat legal term of "agreement" or "contract" but would call the "agreement" between the parties an "understanding." 43 Words and Phrases, Understanding, pages 107, 108; Mitchell v. National Railway Building & Loan Assn., Tex. Civ. App., 49 S.W. 624; Barkow v. Sanger, 47 Wis. 500, 3 N.W. 16.

The substance of the above two opinions concerning the word "understanding" appears in 43 Words and Phrases, supra, pages 107 and 108, as follows:

Mitchell v. National Railway Building & Loan Assn., supra: " 'Understanding', as used in testimony of a somewhat uneducated person to the effect that a deed was executed with a certain understanding, might safely be regarded as synonymous with 'agreement.' "

Barkow v. Sanger, supra: "Webster defines the word 'understanding' as anything mutually understood or agreed upon. An understanding between two parties to a contract as to what rights each shall have thereafter in the subject matter thereof is an agreement. The words 'understanding' and 'agreement' may be used interchangeably, as synonymous."

One of the definitions of "understanding" in American College Dictionary, published in 1953, is: "A mutual agreement of a private or unannounced kind."

■ The interest which will disqualify a witness to testify as to transactions with a person since deceased must be a present, certain and vested interest. Reichart v. Downs, 226 Iowa 870, 285 N.W. 256.

■ II. Our decisions with reference to mutual and reciprocal wills are numerous. We have often held the existence of a contract to make wills may be inferred where it is shown wills containing reciprocal provisions are executed by the husband and wife, each with the knowledge of the other, at substantially the same time and at their joint request. Murphy v. Black, 44 Iowa 176; Baker v. Syfritt, 147 Iowa 49, 125 N.W. 998; Campbell v. Dunkelberger, 172 Iowa 385, 153 N.W. 56; Anderson v. Anderson, 181 Iowa 578, 164 N.W. 1042; Maurer v. Johansson, 223 Iowa 1102, 274 N.W. 99.

The question arises in most of these cases as to the matter of consideration between the parties in the agreement for execution of reciprocal wills. Normally the consideration involved in sustaining reciprocal wills is the fact that the husband and wife both agree that each devises and bequeaths to the other whatever property each owns at death. Maloney v. Rose, 224 Iowa 1071, 277 N.W. 572, 575.

In recent decisions we have modified the theory that simultaneous execution of reciprocal wills alone creates an inference of the existence of a contract or agreement. We have held that a greater quantum of proof than the execution of the wills is necessary to establish such contract. Fowler v. Lowe, 241 Iowa 1093, 42 N.W.2d 516; Hatcher v. Sawyer, 243 Iowa 858, 52 N.W.2d 490; Bell v. Pierschbacher, 245 Iowa 436, 62 N.W.2d 784; In re Estate of Lenders, 247 Iowa 1205, 78 N.W.2d 536; In re Estate of Ramthun, 249 Iowa 790, 89 N.W.2d 337; 94 C. J. S., Wills, section 113(2); 57 Am. Jur., Wills, section 730.

In In re Estate of Lenders, supra, at pages 1213, 1214 of 247 Iowa, we said: "Appellants had the burden to prove by clear and satisfactory evidence the alleged oral agreement they rely upon. * * * According to the great weight of authority there must be other evidence [than the wills alone] of a contract between the testators."

In In re Estate of Ramthun, supra, at page 797 of 249 Iowa,

we stated: "In order that either party be denied the right to revoke, it must appear by clear and satisfactory evidence, or on the face of the wills, that they were executed in pursuance of such contract provisions between the parties."

 In this case there is sufficient evidence to clearly and satisfactorily establish a contract between Mr. and Mrs. Allinson to leave his or her property to the survivor.

The following evidence sustains the contract. 1. The inference drawn from the fact that Mr. and Mrs. Allinson executed identical wills, simultaneously, leaving all property to the survivor. 2. Testimony of Mrs. Pringle, secretary in office of Prince & Blakey, that both parties came into the office together, signed the wills in the presence of each other and in the presence of the two witnesses, Mr. Blakey and herself. 3. Testimony of Mrs. Allinson, as to conversation between Mr. Prince and Mr. Allinson, in which she took no part, in which conversation Mr. Allinson stated in substance that he wanted to make a will so that she would have the home. 4. Testimony of Mrs. Allinson that shortly thereafter they executed the reciprocal wills. 5. Testimony of Shirley Nell Harrell, daughter of plaintiff by her first marriage, as to conversation with Mr. Allinson in 1949, concerning the "understanding" between him and her mother, as to leaving all property to survivor.

III. While the background as to the marriage and life of Mr. and Mrs. Allinson does not of itself establish an agreement between them, yet it establishes adequate consideration and it is a circumstance to be considered as a basis for execution of the reciprocal wills. They lived together as husband and wife for eleven years. While Mr. Allinson had the modest home at time of marriage, Mrs. Allinson brought to the marriage the sum of $2000, all of which she expended on the home or on living expenses. She brought a large supply of household goods. Throughout the years of their marriage she worked and earned substantial money, all of which was used on home improvement or expenses. Mr. Allinson was ill at times for periods of seven or eight weeks. During these periods Mrs. Allinson worked and earned the full living for the family. This family history does establish the fact that because of the contribution of each of

1358

the parties to the modest amount of property left by decedent (home worth not exceeding $3000) it is logical and reasonable that an agreement as to reciprocal wills was made.

The decree and judgment of the trial court was correct and is affirmed.—Affirmed.

All JUSTICES concur.