LILLIAN BARRON et al., appellees, v. KENNETH PIGMAN and MARIE PIGMAN, individually and as coexecutors of the estate of Mary A. Schneberger, deceased, appellants, JENNIE RAWLINGS, intervenor-appellee, VIRGINIA SCHULTZ et al., third-party appellants.

No. 49672.

(Reported in 95 N.W.2d 726)

APRIL 8, 1959.

REHEARING DENIED JUNE 12, 1959.

Thos. L. Woods, of Cedar Rapids, for appellants Kenneth Pigman and Marie Pigman as coexecutors of estate of Mary A. Schneberger, deceased, and for third-party appellants Virginia Schultz and Miriam Burris.

John D. Randall, of Cedar Rapids, for appellants Kenneth Pigman and Marie Pigman individually and Kenneth Pigman and Marie Pigman as coexecutors of estate of Mary A. Schneberger, deceased.

Bleakley & Terpstra, of Cedar Rapids, for third-party appellants Mae Buzzell and Frances Philley.

Donnelly, Lynch, Lynch & Dallas, of Cedar Rapids, for appellees and intervenor-appellee.

OLIVER, J.—This is a suit for the specific performance of an alleged oral contract between testatrix, Mary A. Schneberger, and her husband, James D. Schneberger, who predeceased her, for the disposition of her property in the particular manner shown by a will executed by her, February 10, 1956, in so far

as the same was applicable to plaintiffs and intervenor, said will having been revoked by her last will, executed July 30, 1957, five days before her death. Trial resulted in judgment establishing the contract and ordering its specific performance, as to the provisions for said beneficiaries. Defendants and third-party defendants have appealed. We affirm the judgment of the trial court.

Robert C. Nelson, a practicing attorney in Cedar Rapids, testified James D. and Mary A. Schneberger came to his office together in February 1956 and engaged him to draw wills for them. They told him they were husband and wife, had no children, Mr. Schneberger had no relatives, they had discussed the disposition of their property and wanted the wills drawn so that the property would pass between themselves, and after they were dead they wanted the five sisters of Mrs. Schneberger to have it. The five sisters were Jennie Rawlings, Frances Philley, Bessie Danek, Lillian Barron and Mae Buzzell. Mr. Nelson told Mr. and Mrs. Schneberger wills could be drafted to accomplish the ultimate disposition of the property they wanted and that if wills were drawn in that manner, "the right to change as far as the survivor is concerned would be gone."

Mr. Nelson did not prepare the wills that day but arranged with the Schnebergers to return to his office at a later date. They returned February 10, 1956. He told them the wills were ready and handed the wills to them. After they read the wills, he asked them if that met with their approval and "they both indicated that it was all right." Each will was then executed in the presence of both spouses and of Mr. Nelson and Elva Becker, the attesting witnesses.

The wills were identical in form and context. The dispositive paragraph of Exhibit C, the will of James D. Schneberger, recited:

"I hereby give, devise and bequeath all of my property * * * unto my beloved wife, Mary A. Schneberger, * * * in fee simple and absolutely. Should, however, my beloved wife predecease me, then, in that event, and that event only, I give, devise and bequeath all of my property, * * * unto the following named persons, share and share alike:" naming Jennie

Rawlings, Frances Philley, Bessie Danek, Lillian Barron and Mae Buzzell.

The dispositive paragraph of Exhibit B, the will of Mary A. Schneberger, recited:

"I hereby give, devise and bequeath all of my property * * * unto my beloved husband, James D. Schneberger, * * * in fee simple and absolutely. Should, however, my beloved husband predecease me, then, in that event, and that event only, I give, devise and bequeath all of my property, * * * unto the following named persons, share and share alike:" naming Jennie Rawlings, Frances Philley, Bessie Danek, Lillian Barron and Mae Buzzell.

James D. Schneberger died August 19, 1956. Thereafter his will was probated and Mary A. Schneberger took the estate which passed to her thereunder. July 30, 1957, Mary A. Schneberger executed her last will, Exhibit A, which recited it revoked all former wills and which named as beneficiaries certain nieces, her five sisters, and her neighbors Mr. and Mrs. Pigman who were also nominated coexecutors. She died August 4, 1957, and her last will was admitted to probate, August 19, 1957. Thereafter this suit was instituted by Lillian Barron and Bessie Danek, two of testatrix' sisters. A third sister, Jennie Rawlings, subsequently intervened by joining with plaintiffs. See R. C. P. 75. Defendants were Kenneth Pigman and Marie Pigman, neighbors of decedent, individually and as coexecutors of the estate of Mary A. Schneberger. Subsequently, Virginia Schultz and Miriam Burris, nieces of decedent and Mae Buzzell and Frances Philley, two of her sisters, were brought into the case as necessary parties (see R. C. P. 25) and became third-party defendants.

■ ■ I. Mutual or reciprocal wills have been defined as those executed pursuant to an agreement or compact between two or more persons to dispose of their property in a particular manner, each in consideration of the other. Luthy v. Seaburn, 242 Iowa 184, 188, 46 N.W.2d 44, and citations. The principal question in this case is the sufficiency of the evidence to establish the alleged agreement between the spouses to dispose of their property in the manner provided by their wills executed February 10, 1956. Upon this question Allinson v. Horn, 249

972

Iowa 1351, 1356, 92 N.W.2d 645, 648, cites authorities holding a quantum of proof greater than that furnished by the simultaneous execution of reciprocal wills is necessary to establish such a contract. Among the authorities listed are: Fowler v. Lowe, 241 Iowa 1093, 1094, 42 N.W.2d 516; Hatcher v. Sawyer, 243 Iowa 858, 52 N.W.2d 490; Bell v. Pierschbacher, 245 Iowa 436, 62 N.W.2d 784; 94 C. J. S., Wills, section 113 (2); 57 Am. Jur., Wills, section 730.

In the language of In re Estate of Lenders, 247 Iowa 1205, 1214, 78 N.W.2d 536, 541, there must be other evidence. In re Estate of Ramthun, 249 Iowa 790, 797, 89 N.W.2d 337, 341, states: "* * * In order that either party be denied the right to revoke, it must appear by clear and satisfactory evidence, or on the face of the wills, that they were executed in pursuance of such contract provisions between the parties."

The evidence in the case at bar shows the spouses executed the reciprocal wills, each with the knowledge of the other and at the same time and place. But the proofs were not limited to this. The record shows without dispute they had previously considered, discussed and orally agreed upon this disposition of their property upon their respective deaths, and that their reciprocal wills were executed to formally express and give legal effect to their compact. The proof Mrs. Schneberger's will of date February 10, 1956, was executed pursuant to that agreement or compact is clear, satisfactory and convincing.

II. Appellants complain that Exhibit 1, identified as a carbon copy of Mrs. Schneberger's will of February 10, 1956, was admitted in evidence and considered by the trial court over their objections that it was not the best evidence and no proper foundation had been laid for the introduction of secondary evidence of said former will. Attorney Nelson testified he did not have the original will he had prepared for Mrs. Schneberger and did not know where it was; when the reciprocal wills were executed in 1956 he placed them in separate envelopes and gave Mrs. Schneberger the envelope containing her will, upon which envelope his letterhead was printed and the words "Last Will and Testament of Mary A. Schneberger" were typewritten; after Mr. Schneberger died and his will was admitted

to probate Mrs. Schneberger and he (Nelson) checked the contents of Mr. Schneberger's lockbox in a local bank and Nelson saw there the envelope from his office upon which was the typewritten statement, "Last Will and Testament of Mary A. Schneberger." Mr. Nelson produced what he testified was a carbon copy and a true copy of her will, made when the original was made, and retained by him.

In addition to the foregoing testimony the Answer filed in this suit by defendants Pigman and wife as coexecutors of the will of Mary A. Schneberger denied her former will, Exhibit B, pleaded by plaintiffs, was in existence, either when that answer was filed or at the time Mr. Schneberger's will was probated.

The best-evidence rule requires the production of original documents unless their absence is satisfactorily explained. 32 C. J. S., Evidence, section 782. Whether such absence is satisfactorily explained is to be determined by the court in the exercise of its judicial discretion. Fisher & Ball v. Carter, 178 Iowa 636, 642, 160 N.W. 15.

In the case at bar the proper persons to have custody of Mrs. Schneberger's earlier will, if it were in existence, were the executors of her estate. They were defendants in the case and they answered denying the existence of such will. The trial court correctly found that rendered unnecessary the giving of notice to produce. Postel v. Palmer, 71 Iowa 157, 159, 32 N.W. 257; Cook Manufacturing Co. v. Randall & Dickey, 62 Iowa 244, 246, 247, 17 N.W. 507; Meginnes .v. McChesney, 179 Iowa 563, 582, 160 N.W. 50, L. R. A. 1917E 1060; Farmers Savings Bank v. Neel, 193 Iowa 685, 696, 697, 187 N.W. 555, 21 A. L. R. 1116; 32 C. J. S., Evidence, section 844, pages 778, 779; 20 Am. Jur., Evidence, section 443.

We find the admission and consideration of the carbon copy of the will was not an abuse of discretion on the part of the trial court.—Affirmed.

THOMPSON, C. J., and BLISS, GARFIELD, GARRETT, HAYS, LARSON, and PETERSON, JJ., concur.

THORNTON, J., dissents.

THORNTON, J. (dissenting)—I respectfully dissent.

There is no clear, convincing and satisfactory showing that the mutual will of Mary A. Schneberger was in existence after the death of her husband, James. The trial court in his findings of fact in Paragraph 10 thereof says:

"Later, after the death of James, when Nelson went to the bank and had the lockbox opened for the purpose of securing data for the inventory, he saw therein an envelope with his letterhead and bearing the typewritten words 'Last Will and Testament of Mary A. Schneberger'."

The record shows this question was asked the witness, "On that occasion did you see either of the envelopes in which you had placed these two wills that we have previously talked about?" but the witness never answered the question. The record shows two pages of objections and preliminary matters as to what was written and typed on two envelopes at the time the wills were drawn, and without obtaining an answer to the above question moves into the contents of the file in the Estate of James. Even if the witness had answered that he saw the envelope it would not have been any proof as to the will.

The appellees contend the following shows the will was in existence after the death of James:

"Q. Did she mention to you on that occasion anything about her will, the original of which or a copy of which has been identified here as plaintiff's Exhibit 1?" (Five objections. A page of preliminary questions.)

"Q. All right, now state what she asked you with respect to that will. A. She asked me if she had to have that bank in there in her will.

"Q. As what? A. Well, as executor."

There was absolutely no showing that Mary at that time was talking about the mutual will she executed with James. The preliminary questioning shows she was in the witness's office to get her distributive share and sign a waiver of hearing and for no other purpose. If all she said at the time was what the witness says she did we have no clear, convincing and satisfactory proof of the existence of the mutual will after the husband's death. This may only be a question of examining a witness, but

we should not fill in what might have been said. The contents of the question and the interpretation of the witness are not convincing. The important part of the testimony is what Mary said.

The mutual wills of James and Mary Schneberger were ambulatory until the death of James. Either or both could revoke the wills by notice to the other party. No formal notice is required, all the revoking party need do is to so advise the other and destroy his or her will, if that is the method chosen. Section 633.10, Code of Iowa, 1958. The only reason for the notice is to give the other party an opportunity to revoke if that party so desires. The other party need not revoke.

In Luthy v. Seaburn, 242 Iowa 184, at page 190, 46 N.W.2d 44, 48, this court said: "* * * We have held joint and mutual wills are valid, especially between husband and wife, that there is a contractual element in a joint or mutual will for the benefit of the survivor, that either party may, with notice to the other, recede from the obligation, but if there be no revocation before the death of one of the parties the right of the survivor is fixed according to the terms of the mutual will. Anderson v. Anderson, 181 Iowa 578, 584, 164 N.W. 1042, 1044; Campbell v. Dunkelberger, 172 Iowa 385, 389, 153 N.W. 56; In re Estate of Farley, 237 Iowa 1069, 24 N.W.2d 453."

See also In re Estate of Ramthun, 249 Iowa 790, 89 N.W.2d 337, and Allinson v. Horn, 249 Iowa 1351, 92 N.W.2d 645.

The appellees contend the burden of showing the revocation with notice is on the appellants and cite Curry v. Cotton, 356 Ill. 538, 191 N.E. 307. In that case the will was in existence. Here the will is admittedly lost. The appellees here have the same burden as they would to prove a lost will: (1) its execution, (2) its loss, (3) that the presumption of its intentional destruction by the testator has been rebutted, and (4) its contents. Goodale v. Murray, 227 Iowa 843, 289 N.W. 450, 126 A. L. R. 1121; Page v. Parks, 232 Iowa 879, 6 N.W.2d 298.

If a will is in existence the presumption is it was unrevoked. If it is not in existence the contrary presumption prevails. Page v. Parks, supra. The appellees alleged in their petition their rights became fixed and determined at the time of the death of the said James. A condition precedent to their rights becoming

fixed and determined is the existence, unrevoked, of the mutual will of Mary. If the will is then in existence, then the burden of proving it had been revoked would be on the parties so claiming. Here it is a part of the cause of action that must be proved. The action here is of course different from proving a lost will, but the effect of the proceedings is to enforce the terms of the lost will. The proof here must be clear, satisfactory and convincing. In re Estate of Ramthun, supra.

All of the other elements of the cause of action are properly proved as shown by the majority opinion. For the failure of proof as herein indicated I would dismiss plaintiff's petition, as amended, and reverse the case.